**Matter of Willis C. PIOCH, Bankrupt,**
**Willis C. Pioch, Appellant.**
**No. 11810.**

United States Court of Appeals
Third Circuit.

Argued April 16, 1956.
Decided Aug. 9, 1956.

904

James E. Masterson, Newark, N. J. (Kleinberg & Moroney, Newark, N. J., on the brief), for appellant.

Daniel Parke Lieblich, Paterson, N. J., for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

This is an appeal from the affirmance by the District Court of the Order of the Referee in Bankruptcy denying a bankrupt his discharge on the ground that he had violated the provisions of Section 14, sub. c(4) of the Bankruptcy Act as amended,[1] in that he had within twelve months preceding the filing of his bankruptcy petition transferred his automobile to his employer with the intent "to hinder, delay and defraud his creditors."

The Referee made the following factual findings:

Willis C. Pioch, the bankrupt, purchased a new 1953 Buick automobile (in March, 1953) for $3,600.00. In order to complete the purchase he obtained a bank loan of $2,700.00. (The amount of the loan was actually $2,750.00). The loan was repayable in monthly installments of $135.00 or $150.00. The bankrupt made the required payments for a period of three months and then being without funds he was unable to make any future payments. He went to his employer and after apprising him of his financial plight, they entered into an arrangement whereby the bankrupt transferred title to the automobile to his employer "without receiving for the aforesaid transfer any consideration". The employer then proceeded to make the payments due upon the bankrupt's loan. The bankrupt continued to use the car as he had in the past; "he claimed that he needed to use the automobile to carry out his duties as a salesman". At the time of the transfer the bankrupt owed approximately $2,500.00 on his loan; $700.00 less than its then value. The automobile was the bankrupt's only asset at the time of its transfer.

Based upon these factual findings the Referee made the further finding that "the bankrupt, by his conduct in the transfer of the said automobile, placed it out of his control and possession and made it impossible for the trustee to re-

---

1. Section 14, sub. c(4), Title 11 U.S.C.A. § 32, sub. c(4) provides, inter alia:
 "c. The court shall grant the discharge unless satisfied that the bankrupt has * * * (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, * * * any of his property, with intent to hinder, delay, or defraud his creditors; * * *."

cover any equity ($700.00) in the car for the benefit of the creditors of the bankrupt and that the bankrupt transferred the car with the intention to hinder, delay or defraud his creditors."

The District Court on review held that "The Referee's conclusion that the bankrupt intended to hinder, delay, and defraud his creditors must be affirmed by this court unless it is clearly erroneous"; and, since "With but one exception, the Referee's Findings of Fact (upon which he based his conclusion) are supported by the record" his disposition required affirmance. The "one exception" to which the District Court referred, was the Referee's finding that there was an absence of consideration for the bankrupt's transfer of his auto to his employer. On that score the District Court specifically found that "His (the Referee's) finding that the bankrupt's transfer of his auto was without consideration is erroneous in that there was consideration consisting of the transferee's payment of the bankrupt's debt to the (his) bank".

■ Before proceeding further it must be pointed out that the District Court erred in its view that "The Referee's conclusion that the bankrupt intended to hinder, delay, and defraud his creditors must be affirmed by this court unless it is clearly erroneous".

With respect to the Referee's "conclusion" it must immediately be noted that it was in the nature of an ultimate finding of fact and on that score it is well-settled that such a finding is but a legal inference from other facts [2] and as such is subject to review free of the restraining impact of the so-called "clearly erroneous rule" applicable to ordinary findings of fact by the trial court.[3]

Our problem then is to determine whether the evidence on which the Referee premised his ultimate finding of fact of proscribed conduct on the part of the bankrupt measures up to the applicable standard of legal proof.

Applicable to the issue are these well-settled principles:

■ To bar the bankrupt's discharge there must be an actual fraudulent intent on the part of the bankrupt to hinder, delay or defraud his creditors and constructive intent is not sufficient;[4] the reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural;[5] speculation cannot be substituted for proof and the requirement is for probative facts capable of supporting, with reason, the conclusions of the trier of fact;[6] the burden of proof is on the objecting creditor to prevent the bankrupt's discharge, otherwise stated, the objecting creditor must make out a prima facie case;[7] the right to a discharge is statutory and Section 14 of the Bankruptcy Act must be construed strictly against the objecting creditor and liberally in favor of the bankrupt;[8] and "it is not so much the acts of the bankrupt

2. Baumgartner v. United States, 1944, 322 U.S. 665, 670, 671, 64 S.Ct. 1240, 88 L.Ed. 1525; Lehmann v. Acheson, 3 Cir., 1953, 206 F.2d 592, 594; Galena Oaks Corporation v. Scofield, 5 Cir., 1954, 218 F.2d 217, 219; Goldberg v. Commissioner, 5 Cir., 1955, 223 F.2d 709, 711; Consolidated Naval Stores Co. v. Fahs, 5 Cir., 1955, 227 F.2d 923, 925. See also 5 Moore's Federal Practice, 2d ed. Sec. 52.03 (3), p. 2631.

3. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.

4. In the Matter of Wolf, 3 Cir., 1948, 165 F.2d 707, 710; In re Topper, 3 Cir., 1956, 229 F.2d 691, 692, 693.

5. Dilworth v. Boothe, 5 Cir., 1934, 69 F.2d 621, 624; Thompson v. Eck, 2 Cir., 1945, 149 F.2d 631; Tancer v. Wales, 2 Cir., 1946, 156 F.2d 627, 628.

6. In re Leichter, 3 Cir., 1952, 197 F.2d 955, 957, certiorari denied Dworsky v. Leichter, 344 U.S. 914, 73 S.Ct. 336, 97 L.Ed. 705.

7. Lodi Trust Co. v. Cohn, 3 Cir., 1939, 108 F.2d 26; McMullin v. Todd, 10 Cir., 1955, 228 F.2d 139.

8. Roberts v. W. P. Ford & Sons, 4 Cir., 1948, 169 F.2d 151; In re Leichter, supra, Note 6; McMullin v. Todd, supra, Note 7.

that will prevent his discharge, as it is the intent with which he acts." [9]

■ In the instant case the Referee failed to set forth the evidence upon which his ultimate fact finding and conclusion of law with respect to the alleged violation were premised, as he was required to do under General Order 47, Section 30 of the Bankruptcy Act.[10] As we pointed out in In re Leichter, 3 Cir., 197 F.2d 955, 957, the failure to comply with General Order 47 would alone require reversal of the Referee's denial of the discharge. However, even assuming that there had been compliance with General Order 47, the record itself discloses that the Referee erred in his determination that the bankrupt had violated Section 14, sub. c(4). The Referee's "Memorandum" discloses that the *sole* premise of his determination was the mere act of the transfer of the automobile and its use thereafter by the bankrupt. Said the Referee:

> "I find that the bankrupt, by his conduct in the transfer of the said automobile, placed it out of his control and possession and made it impossible for the trustee to recover any equity in the car for the benefit of the creditors of the bankrupt and that the bankrupt transferred the car with the intention to hinder, delay and defraud his creditors. It is plain that the transfer was made in order to allow the bankrupt to have full use, possession and control of the automobile for his personal benefit to the detriment of his creditors.
>
> \* \* \* \* \* \*
>
> "It is not essential in this fact situation for the trustee to prove the intent to defraud; it is inferred as a matter of law."

■ As we earlier stated, it is well-settled that to bar the bankrupt's discharge there must be an *actual* fraudulent intent on the part of the bankrupt to hinder, delay or defraud his creditors and *constructive* intent is not sufficient; further it is not so much the acts of the bankrupt that will prevent his discharge as it is the intent with which he acts.[11] Here the Referee considered the mere acts of transfer and retained possession as sufficient and he specifically "inferred as a matter of law" the fraudulent intent. He erred in both respects.

The case books abound with instances in which it was held that the mere act of transfer of an asset is insufficient to bar a discharge. In In re Beebe, D.C.N. D.Ohio 1951, 99 F.Supp. 308 the bankrupt was unable to continue payments on his automobile loan and in consideration of his wife's making such payments he transferred the car to her. It was there held that the mere act of transfer did not constitute evidence of the essential actual intent to defraud and that constructive intent was insufficient to bar a discharge. In In re Williams, D.C.W.D. S.C.1921, 286 F. 135 the bankrupt conveyed to his wife their heavily mortgaged home shortly before filing the bankruptcy petition. It was held that the mere act of conveyance was not sufficient in that fraudulent intent had not been established and that it could not be inferred. In In re Casey, D.C.E.D.N.Y. 1944, 57 F.Supp. 805 the bankrupt made a gift of an asset to his wife and daughter while a tort action was pending against him. Again it was held that the bare act of transfer was not enough; that the discharge could not be denied in the absence of proof of actual fraudulent intent.[12]

9. In re Parnell Lumber Co., D.C.N.D.Ohio 1951, 107 F.Supp. 794, 800.

10. Title 11 U.S.C.A. following section 53.

11. That there "must be actual fraudulent intent as distinguished from constructive intent" in order to justify the denial of the discharge under Section 14, sub. c(4) was specifically held in In re Parnell Lumber Co., supra, Note 9.

12. See also In re William Tirschler & Co., D.C.E.D.N.Y.1926, 18 F.2d 365; In re Beggs, D.C.1950, 93 F.Supp. 863; In re Nemerov, D.C.S.D.N.Y.1955, 134 F.Supp. 678.

It is true that here, as the Referee found, "the transfer was made in order to allow the bankrupt to have full use, possession and control of the car for his personal benefit" but that fact alone contains no element of fraudulent intent. The bankrupt was a salesman and he could not pursue his calling without the use of a car. As he put it, "I couldn't be a salesman and not have a car". He travelled some 37,000 miles in the 15-month period and practically "lived in the car".[13] The testimony was undisputed that the bankrupt's employer, the Lescola Corporation, paid off his $2440 indebtedness on the car and assumed the cost of its repair and maintenance in order to enable the bankrupt to have the use of the car for the purpose of his employment. The record discloses absolutely no basis for the Referee's finding that the car was transferred with the intent to hinder, delay and defraud the bankrupt's creditors. He arrived at that determination by conjecture and speculation and as was earlier pointed out, speculation cannot be substituted for proof and the requirement is for probative facts capable of supporting with reason, the conclusions of the trier of facts. Further, the Referee disregarded the settled rule that the right to a discharge is statutory and Section 14 of the Bankruptcy Act must be construed strictly against the objecting creditor and liberally in favor of the bankrupt. The Referee so far lost sight of the latter proposition that he found the transfer was "without consideration" despite the fact that the evidence established that the bankrupt's employer in taking title, paid $2440 (in settlement of the bankrupt's loan on the car). On that score it will be recalled that the District Court held the finding of absence of consideration to be clearly erroneous.

Considering every aspect of the record it demonstrates that the objecting creditor failed to bear his burden of making out a prima facie case of fraudulent intent on the part of the bankrupt and that accordingly the objection should have been dismissed and the bankrupt's discharge granted.

The record in broad outline presents this situation:

The bankrupt filed his petition November 30, 1953. His wife died in 1951 after an illness which left him heavily in debt to a hospital in the amount of $2,500.00;[14] to her physician in the amount of $1,500.00;[15] to an undertaker (amount undisclosed);[16] to a bank from which he had made a personal loan;[17] and to several miscellaneous creditors. At the time of the transfer of the car there was a suit pending against the bankrupt in the New York Courts. The plaintiff in that suit was Abraham Levine, the sole objecting creditor in this case. Levine later obtained a judgment against the bankrupt in the amount of $4,303.07. During the two years 1951–1953 the bankrupt, earning approximately $75.00 a week made periodic payments to various creditors which left him "broke". In March, 1953, Unit Associates, which then employed him as a salesman, advanced more than a thousand dollars to buy a Buick car which he had to have in order to perform his job. The cost of the car was $3787.00; the bankrupt borrowed $2750.00 from a bank and as stated, Unit Associates put up the difference. Under the terms of his bank loan bankrupt was required to make monthly payments of $135.00 to $150.00 in reduction of his loan. He had made three such payments when in July, 1953, his employment with Unit Associates was terminated. He was "broke" at the time and unable to make the Au-

---

13. N.T. p. 32, Adjourned Hearing before the Referee, June 29, 1954.

14. Medical Center, Harkness Pavilion, New York City.

15. Dr. Martin DeForest Smith, New York City.

16. Howard Hallett Funeral Directors, Flushing, Long Island, N. Y.

17. Modern Industrial Bank, New York. The original loan of $1,000 had been reduced at the time of filing of the bankruptcy petition to $280.00.

gust, 1953 payment on his car. He advised the Lascola Corporation, with whom he had then just obtained employment as a salesman, of his financial plight. Lascola, because of his situation had previously loaned him in excess of $400.00. It agreed to pay off the balance of his indebtedness on his car, $2440.00 and to take title to it. It further agreed to permit him to use the car in order to carry out his duties as a salesman and also, as owner of the car, to pay all repairs and maintenance costs. Lascola borrowed $2440.00 from its own bank to pay the bankrupt's bank. The following excerpts from the bankrupt's examination at a hearing held on June 29, 1954, to consider the creditor's objections to his discharge are highly illuminating (Pages 29–33):

"A. As a result of the conversation he bought the automobile so that I could conduct my business as a salesman.

"Q. Was it necessary for you to have your automobile or an automobile for your business? A. Yes, sir.

\* \* \* \* \* \*

"Q. Why do they let you have the car after it was transferred? A. I am a salesman for his organization and I couldn't be a salesman and not have a car. I ran thirty-seven thousand miles on that car in the last fifteen months, and so I practically live in it.

"Q. Why didn't he give you the difference between the amount due and the real value of the car? A. He had already advanced me money that I hadn't earned.

"Q. That is not what you said before. A. Well, it wasn't considered as such. It wasn't even discussed at that time, but that was the fact."

Again at page 34 of the Notes of Testimony at the same hearing the Referee examined the bankrupt as to the transfer:

"Q. Why didn't you get more money? A. I personally didn't think that the car was worth it. If I was going to lose the car through nonpayment to the bank it didn't make any difference. I felt that there wasn't anything worth while—substantial.

"Q. Why didn't you let the car be turned over to the trustee? A. I wasn't in bankruptcy."

Elaborating on the latter score, the bankrupt further testified (page 35 N.T. same hearing):

"There was no thought of bankruptcy at that time, it wasn't even considered. I had no intention of going into bankruptcy at that time. There wasn't one creditor that was pushing me at that time."

It is evident from the foregoing that the Referee was of the opinion that the mere transfer of the automobile for less than its then market value—which expert testimony had fixed at approximately $3200.00 compared to the $2440.-00 loan secured by it—per se "inferred as a matter of law" fraudulent intent. Assuming for the sake of argument that such intent could be inferred we are of the opinion that there was no basis for such inference under the circumstances of this case.

 The bankrupt at the time of the transfer was not required, when he couldn't meet the payments on his car, to sell it just because he could salvage something for his creditors. Indeed the creditors arguably stood to gain more if he was able to continue employed than if he lost his employment by reason of loss of his car. The car in the bankrupt's case was in every sense the "tool of his trade" and it has never been required of a bankrupt that he surrender his tools to benefit his creditors. The bankrupt's transfer of his car was to insure his retention of the tool of his trade and there wasn't an iota of evidence to sustain a determination that there was any "fraudulent intent" involved.

For the reasons stated the Order of the District Court affirming the Order of the Referee will be reversed and the cause remanded with instructions to proceed in accordance with this Opinion.