**In the Matter of Julius FURST, Debtor.**
**No. B 94415.**

United States District Court
S. D. New York.
March 31, 1966.

Robert M. Morgenthau, U. S. Atty., New York City, for the Government, Julius Rolnitzky, Asst. U. S. Atty., of counsel.

Kostelanetz & Ritholz, New York City, for Julius Furst.

CROAKE, District Judge.

This is a petition by the Government to review the order of the Hon. Edward J. Ryan, Referee in Bankruptcy, filed April 19, 1965, expunging an item of excise taxes for $35,000 from the proof of claim of the United States herein, and upon such review, to vacate and reverse the order and dismiss the objections raised by the debtor.

The controversy involves the excise tax consequences of the auction sale by the Parke Bernet Galleries, Inc. of a diamond necklace known as the Rovensky Necklace in January of 1957. The provisions of law relevant to such consequences are set out in the margin.[1]

The facts as found by the Referee in his memorandum decision are as follows:

"Julius Furst, the debtor herein, had been engaged in the jewelry business for about twenty-seven years. Prior to the date of the auction sale, January 23, 1957, Mr. Furst had known Louis A. Green and Mrs. Green and had sold to them some jewelry. At Mr. Green's request, Mr. Furst appraised the Rovensky Necklace prior to its sale. He gave an opinion as an expert that for resale purposes the necklace was worth at least $425,000.

"At the time of the sale, Messrs. Green and Furst sat together and Louis Green made the successful bid of $385,000. In accordance with a prior arrangement made with Julius Furst, Mr. Green caused Parke-Bernet Galleries, Inc. to treat Julius Furst as the successful bidder. It appears that the Galleries had similarly accommodated Mr. Green by 'transferring' sales from one name to another on a prior occasion.

"As a result of this arrangement, the debtor enjoyed substantial publicity as the purchaser of the Rovensky Necklace. In addition, he was given a limited agency to solicit purchasers of the gems. Mr. Furst was put in funds for the purchase of the Rovensky Necklace through Mr. Green. A corporation, C.W.S. Inc., had been set up to hold ultimate title to the Rovensky Necklace for the benefit of Mr. Green's children, Sedgwick W. Green and Cynthia Green Colin.

"A retailer's exemption certificate dated '1950', signed by Julius Furst, the debtor, was in the Parke-Bernet Galleries, Inc. files at the time of the sale. In 1959, C.W.S. Inc. had filed with Parke-Bernet Galleries, Inc. a retailer's exemption certificate."

In the proceedings before the Referee, the contentions of the Government were essentially twofold; that is, that Furst

1. 26 U.S.C. § 4001, applicable at that time, provides that:
   "There is hereby imposed upon the following articles sold at retail a tax equivalent to 10 percent of the price for which so sold:
   All articles commonly or commercially known as jewelry, whether real or imitation. * * * *"
   The various applicable provisions of the regulations indicate in substance that the tax is payable by the person selling at retail, that sales by persons engaged in the business of retail selling of such articles are presumptively deemed to be at retail, unless the character as a sale for resale is demonstrated either by a "retailers' exemption certificate" in specified form furnished by the purchaser or by equivalent proof of exemption. Finally, as to the period of limitations, 26 U.S.C. § 6501(a) provides that:
   "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period."

purchased the necklace at the auction as a principal and then resold to Green or the corporation for the same sum, the claim against Furst being predicated upon the latter sale; or, in the alternative, that by reason of his conduct in the situation, Furst is estopped to deny his sale of the necklace to Green or the corporation. As to the first argument, the Referee found that Furst did not purchase the necklace in his own right, but rather as an agent of the purchaser. As to the second, it was found that:

"The agent of the United States investigating the taxability of the sale had been informed of the facts of the transaction in time to collect the tax from the seller but he failed to do so." Finding of Fact #15.

The Referee then concluded that:

"No acts or conduct of the debtor in possession misled Agent Keaveny in ascertaining the taxability of the transaction; accordingly no estoppel arises to preclude the debtor in possession from showing the true state of facts." Conclusion of Law #4.

Upon the instant petition, the Government directs attention to the question of estoppel.[2]

In Robinson v. Commissioner of Internal Revenue, 100 F.2d 847 (6th Cir. 1939), cert. den. 308 U.S. 567, 60 S.Ct. 81, 84 L.Ed. 476 (1940), the court spoke as follows upon the matter of equitable estoppel.

"Equitable estoppel applies in tax cases when the following correlative facts are present: The taxpayer, by his conduct, which includes language, acts, or silence knowingly makes a representation or conceals material facts which he intends or expects will be acted upon by taxing officials in determining his tax, and the true or concealed material facts are unknown to the taxing officials or they lack equal means of knowledge with the taxpayer, and act on his representation or concealment and to retrace their steps on a different state of facts would cause the loss of taxes to the Government. A weighty factor in determining the application of the principle is the availability of the necessary facts to the parties involved." 100 F.2d at 849.

Thus a prerequisite to the maintenance by the Government of its position is a finding by this court of error in finding of fact #15, what counsel for the Government terms "the crucial finding of fact made by the Referee. * * *"[3]

Counsel urges the following position as to the standard under which that finding is to be reviewed:

"With respect to the Referee's 'conclusion' it must immediately be noted that it was in the nature of an ultimate finding of fact and on that score it is well-settled that such a finding is but a legal inference from other facts and as such is subject to review free of the restraining impact of the so-called 'clearly erroneous rule' applicable to ordinary findings of fact by the trial court." In re Pioch, 235 F.2d 903, 905 (3d Cir. 1956).

Counsel for the debtor apparently urges the applicability of the clearly erroneous standard of General Order 47.

The court has had this matter under consideration for some time and has availed itself of the opportunity for examination of the proceedings before the Referee, with particular attention fo-

2. Thus, for example, at p. 15 of his memorandum, the Assistant United States Attorney states the question presented as:
"Will a court of bankruptcy, in the exercise of its equitable jurisdiction, apply the doctrine of equitable estoppel and prevent a taxpayer from denying the truth of facts which he, by his acts, conduct and silence led the United States to believe, and which were relied upon by the United States, where the proof of the actual facts will result in a loss of revenue to the government, will permit a taxpayer to take advantage of his own wrong, and will result in this Court being used as an instrument in the perpetration of a fraud, injustice or wrong against the government."

3. See p. 47 of the Memorandum of Law.

**424**

cused upon the testimony of Agent Keaveny. Assuming the applicability of the standard of review urged by the Government, the court nevertheless finds ample evidence to support the finding by the Referee. Accordingly, the petition is in all respects denied.[4]

So ordered.

---

4. In view of the determination here reached, various additional questions raised need not be passed upon and no opinion is expressed upon them.