In the Matter of Marion CHEVAL,
Bankrupt.

Marion Cheval, Appellant.

No. 16550.

United States Court of Appeals
Third Circuit.

Argued Oct. 19, 1967.

Decided Nov. 30, 1967.

Isadore B. Miller, Miller & Platt, Paterson, N. J. (Harry Zax, Paterson, N. J., on the brief), for appellant.

Louis Auerbacher, Newark, N. J., for appellee.

Before HASTIE, FREEDMAN and SEITZ, Circuit Judges.

OPINION OF THE COURT

HASTIE, Circuit Judge.

The district court, affirming an order of a referee in bankruptcy, denied the bankrupt, Marion Cheval, her discharge and Mrs. Cheval has appealed.

The bankrupt was denied her discharge on the separate grounds (1) that as secretary of a corporation she had made false statements in writing concerning the financial condition of the corporation and (2) that she had transferred two automobiles to her husband, Edmund Cheval, in fraud of creditors.

Section 14(c) of the Bankruptcy Act provides in pertinent part for the grant-

ing of a discharge to a bankrupt unless he has "(3) while engaged in business * * * as an executive of a corporation, obtained for such business money or property on credit * * * by making or publishing or causing to be made or published in any manner whatsoever a materially false statement· in writing respecting * * * the financial condition of such * * * corporation". 11 U.S.C. § 32(c) (3). In substance, the referee's finding relevant to this section, as approved by the district court, was that a corporation, of which Mrs. Cheval was secretary and her husband president, obtained credit on the basis of four materially false financial statements containing overstatements of assets and understatements of liabilities. However, it was also expressly found that "the bankrupt did not prepare these statements nor did she sign them. They were signed by Edmund H. Cheval". The financial statements were dated June 30, 1961, October 31, 1961, March 31, 1962, and July 21, 1962. The only act of Mrs. Cheval which the referee and the court below deemed significant was her signing, as secretary, corporate applications for performance bonds which were granted after the bonding company had considered the false financial statements. The corporate applications for performance bonds were executed by Mr. and Mrs. Cheval in October and November, 1962.

There is nothing to show that Mrs. Cheval knew or should have known that the financial statements executed by her husband were false, or that she intended that they be used or knew that they were in fact used to support the subsequent bond applications which she signed. Even the formal objections of the bonding company to Mrs. Cheval's discharge stated merely that before issuing the performance bonds it required "Edmund H. Cheval, Inc., to submit financial statement" and that the statement was untrue in specified particulars. Neither complicity in nor guilty knowledge of the misrepresentation is anywhere charged to Mrs. Cheval, much less proved.

■ True, Mrs. Cheval signed the bond application and an attendant personal undertaking to indemnify the bonding company. But these were not statements "respecting the financial condition" of the corporation within the meaning of section 14(c) (3). Cf. Johnston v. Johnston, 4th Cir., 1933, 63 F.2d 24. Accordingly, we conclude that the proof in this record is not sufficient to establish a prima facie case for the denial of a discharge on the ground that Mrs. Cheval either made or caused to be made a false financial statement.

Different considerations are presented by the charge that within the twelve months immediately preceding bankruptcy Mrs. Cheval transferred the title of two automobiles to her husband "with intent to hinder, delay or defraud * * * [her] creditors" within the meaning of section 14(c) (4) of the Bankruptcy Act. 11 U.S.C. § 32(c) (4).

The record shows that the statement of affairs which Mrs. Cheval filed with her bankruptcy petition explicitly recited that in January, 1966, she had transferred the automobiles, subject to outstanding liens, to her husband. When examined at the hearing on objections to her discharge she testified that her husband was making the payments on these cars and, therefore, she transferred them to him. In addition, the referee and the district court specifically found that at the time of the transfer "the amounts due as liens on the vehicles were in excess of their value".

■ Thus, the vehicles represented nothing of value to general creditors and, even if the trustee had taken possession of them, the lien holders would have prevailed on reclamation petitions. Moreover, the transfer of title from wife to husband did not in any way impair the security of the lien holders. It is not even suggested that there was any removal of the vehicles from one place to another which might have hindered repossession by the lien holders. And Mrs. Cheval offered a reasonable explanation of the motivation of the formal transfer of title. Finally, her disclosure of the transfers

in her formal statement of affairs is impressive evidence that she was not attempting to defraud or hinder creditors.

All of these circumstances considered, we think the finding that Mrs. Cheval acted to defraud, hinder or delay her creditors lacked adequate support in the record. Cf. In re Pioch, 3d Cir., 1956, 235 F.2d 903. The policy of the law favors discharges in bankruptcy. "Unless it clearly appears that the bankrupt has committed some act which precludes his right, he is entitled to a discharge." McMullin v. Todd, 10th Cir., 1955, 228 F.2d 139, 142.

The order denying the bankrupt a discharge will be reversed.