OPINION OF THE COURT
ALDISERT, Circuit Judge.
This appeal from an appellate decision of the district court, which reversed the judgment of a bankruptcy court in an adversary proceeding, requires us to examine the standard of appellate review of a judicial determination of abandonment of title to personal property. The district court reversed the bankruptcy judge, deeming the abandonment determination clearly erroneous, and entered an injunction in favor of plaintiff-appellee C.A. Hughes & Company. We also must address the nature of our review of the district court’s appellate decision. We hold that we must exercise plenary review of the district court’s decision; that abandonment is a mixed question of fact and law; and that the district court erred in reversing the judgment of the bankruptcy court. We therefore reverse the judgment of the district court and direct that the judgment of the bankruptcy court be affirmed.
I.
Since 1904, appellee Hughes has held both title to a seam of coal under and the right to use the surface of the “Tiley Tract,” located in Cambria County, Pennsylvania. Hughes operated a deep mine under the tract from 1912 to 1954; and in the course of its mining operations, Hughes created on the surface of the tract a 25 acre, 250 foot high mountain of culm or coal refuse known as the “Cassandra Pile.” Appellant Universal Minerals acquired title to the surface of the Tiley Tract in 1975, and in 1978 it began salvaging coal from the Cassandra Pile. Hughes, claiming ownership of the pile, sued Universal in state court, seeking an injunction, an accounting, and damages. Universal subsequently filed a Chapter XI bankruptcy petition in the district court, which under Rule 11 — 44 of the Rules of Bankruptcy Procedure stayed the state proceedings.[1] Hughes then commenced an adversary proceeding against Universal under Part VII of the Rules of Bankruptcy Procedure, see Rule 7001, Interim Bankruptcy Rules, seeking the same relief. Following a three-day trial, the bankruptcy court determined that Hughes had abandoned the Cassandra Pile and entered judgment for Universal. Hughes appealed this decision to the district court pursuant to Bankruptcy Rule 801. The district court held the determination clearly erroneous and reversed the judgment, enjoined Universal from continuing its salvage operations, and remanded to the bankruptcy court for an accounting. Universal now appeals from the judgment of the district court. Appellant’s chief argument is that the district court exceeded the proper scope of review. It contends that appellate courts are bound by the factual determinations of the bankruptcy court in the absence of a showing of a “gross miscarriage of justice,” and that the district court erred in holding the finding of abandonment clearly erroneous. Appellee joins the issue by contending that abandonment and intent to abandon are not findings of fact within the “clearly erroneous” rule, but “ultimate findings” subject to plenary review on appeal to the district court.
II.
First, we must address the question of whether this court has jurisdiction over the appeal. The Bankruptcy Reform Act of 1978 included a series of amendments and additions to Title 28 which created a new schema for hearing bankruptcy appeals.[2] District courts have appellate jurisdiction *101 over “final judgments, orders, and decrees of bankruptcy courts,” and they also have discretion to hear appeals from interlocutory orders of bankruptcy courts. 28 U.S.C. § 1334. On the other hand, this court has jurisdiction of “an appeal from a final judgment, order, or decree of ... a District court [exercising appellate jurisdiction over a bankruptcy matter].” 28 U.S.C. § 1293(b). Although there are a host of potential issues concerning this statement of the appellate authority of this court, the procedural position of the case on appeal presents a narrow issue for decision.[3]
The district court reviewed the bankruptcy court’s decision without commenting on the distinction made in 28 U.S.C. § 1334 between final and interlocutory orders. The bankruptcy court had denied all relief sought in the adversary proceeding, and therefore the bankruptcy court’s disposition was final for the purposes of § 1334(a). Once the district court’s jurisdiction under § 1334(a) is established, our jurisdiction under § 1293(b) would seem to follow. The bankruptcy court had rendered a final decision, and the judgment of the district court conclusively determined the question presented by this appeal and awarded possession of the property to Hughes. The judgment of the district court certainly was final in the sense that nothing remained for the district court to do. In addition, reversal of its judgment “would be preclusive of any further litigation on the relevant cause of action,” Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 482-83, 95 S.Ct. 1029, 1039-40, 43 L.Ed.2d 328 (1975). Under these circumstances, we conclude that the finality requirement of § 1293(b) is satisfied notwithstanding the remand to the bankruptcy court for an accounting.
This interpretation of § 1293(b) is arguably supported by analogy to the traditional interpretation of 28 U.S.C. § 1257, which authorizes Supreme Court review of final judgments or decrees of state courts. Whether the cases interpreting § 1257 should be treated as relevant in determining the proper meaning of § 1293(b) is open to question. Certainly, the institutional considerations and significance of the final judgment rule in the context of the review of state court judgments are markedly different than the considerations pertinent to the review of appeals from the district court’s exercise of its appellate jurisdiction over bankruptcy appeals. We leave to another day, however, a more complete discussion of the possible relationship between 28 U.S.C. § 1293(b) and § 1257. Employing the “pragmatic approach” of Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 486, 95 S.Ct. 1029, 1041, 43 L.Ed.2d 328 (1975), and Radio Station WOW v. Johnson, 326 U.S. 120, 65 S.Ct. 1475, 89 L.Ed. 2092 (1945), two leading cases interpreting and applying § 1257, we will consider the decision of the district court a final judgment for the purposes of § 1293(b).[4]
III.
We now address the standard of review that we must apply to the decision of the district court. As an appellate court twice removed from the primary tribunal, we review both the factual and the legal determinations of the district court for error. The district court does not sit as a finder of facts in evaluating them as a *102 court of review, and therefore its evaluation of the evidence is not shielded by the “clearly erroneous” standard of Fed.R. Civ.P. 52(a), which applies only to a trial court sitting as a fact finder. We are in as good a position as the district court to review the findings of the bankruptcy court, so we review the bankruptcy court’s findings by the standards the district court should employ, to determine whether the district court erred in its review. To the extent the parties challenge the choice, interpretation, or application of legal precepts, we always employ the fullest scope of review: we examine the decision of the court from which the appeal is taken for error, and the legal determinations of the district court as a reviewing tribunal are not shielded by any presumption of correctness.
IV.
Before evaluating the nature of the abandonment question presented by this appeal, it is necessary to segregate three distinct concepts which are often implicated in the review of judicial findings. These concepts — basic facts, inferred facts, and ultimate facts — are fundamental to the anatomy of fact finding in the judicial process.
Basie facts are the historical and narrative events elicited from the evidence presented at trial, admitted by stipulation, or not denied, where required, in responsive pleadings. Inferred factual conclusions are drawn from basic facts and are permitted only when, and to the extent that, logic and human experience indicate a probability that certain consequences can and do follow from the basic facts. See, e.g., Edward J. Sweeney & Sons, Inc. v. Texaco Inc., 637 F.2d 105, 116 (3d Cir. 1980), cert. denied, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981). No legal precept is implicated in drawing permissible factual inferences. But an inferred fact must be distinguished from a concept described in a term of art as an “ultimate fact.” So conceived, an ultimate fact is a mixture of fact and legal precept:
An ultimate fact is usually expressed in the language of a standard enunciated by case-law rule or by statute, e.g., an actor’s conduct was negligent; the injury occurred in the course of employment; the rate is reasonable; the company has refused to bargain collectively. “The ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact”. It is the province of the fact finder — the jury, the judge in non-jury cases, or the administrative agency — to “find” the basic fact, or that part of an ultimate finding that rests on narrative or historical facts.... [0]nce basic facts have been found, they are seldom dislodged. R. Aldisert, The Judicial Process 694 (1976) (quoting Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 491, 57 S.Ct. 481, 573, 81 L.Ed. 755 (1937)).
Smith v. Harris, 644 F.2d 985, 990 n.1 (3d Cir. 1981) (Aldisert, J., concurring).
The importance in distinguishing among the three facets of fact finding is reflected in the various standards of judicial review. Where basic facts and facts permissibly inferred therefrom are found by the court sitting as a fact finder, neither the basic facts nor the inferred facts may be disturbed on review unless they are deemed clearly erroneous. Fed.R.Civ.P. 52(a); United States v. United States Gypsum Co., 333 U.S. 364, 394, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). “[A] review of ultimate facts,” on the other hand, “entails an examination for legal error of the legal components of those findings.” Smith v. Harris, 644 F.2d at 990 (Aldisert, J., concurring).
V.
A.
We now consider the nature of the question presented to the bankruptcy court, abandonment of title to personal property, to determine the proper standard of review on appeal from its judgment.[5] In this *103 bankruptcy proceeding we must apply Pennsylvania law to adjudicate the rights of the parties to the Cassandra Pile. Pennsylvania courts have held that culm or coal, “when severed from the earth, becomes personal property, [and] it may be abandoned as such when it is left on the land of another with the intention of abandoning it.” Llewellyn v. Philadelphia & Reading C. & I. Co., 308 Pa. at 497, 502, 162 A. at 429, 430 (1932); see Gilberton Coal Co. v. Schuster, 403 Pa. 226, 228-29, 169 A.2d 44, 45 (1961). See also 4 American Law of Mining § 21.1 at 102.2 (1981). Abandonment is not a question of narrative or historical fact but an ultimate fact, a legal concept with a factual component. See, e.g., Gilberton Contracting Co. v. Hook, 255 F.Supp. 687 (E.D.Pa. 1966); Fidelity-Philadelphia Trust Co. v. Lehigh Valley Coal Co., 294 Pa. 47, 143 A. 474 (1928). It is “a conclusion of law or at least a determination of a mixed question of law and fact,” Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 491, 57 S.Ct. 569, 573, 81 L.Ed. 755 (1937), requiring “the application of a legal standard to the historical-fact determinations,” Townsend v. Sain, 372 U.S. 293, 309 n.6, 83 S.Ct. 745, 755 n.6, 9 L.Ed.2d 770 (1963). In reviewing the ultimate determination of abandonment, as an appellate court, we are therefore not limited by the “clearly erroneous” standard, Fleer Corp. v. Topps Chewing Gum, Inc., 658 F.2d 139, 154 (3d Cir. 1981), but must employ a mixed standard of review. We must accept the trial court’s findings of historical or narrative facts unless they are clearly erroneous,[6] but we must exercise a plenary review of the trial court’s choice and interpretation of legal precepts and its application of those precepts to the historical facts. See United States v. United States Gypsum Co., 333 U.S. at 394, 68 S.Ct. at 541; Smith v. Harris, 644 F.2d at 990 (Aldisert, J., concurring); cf. Cuyler v. Sullivan, 446 U.S. 335, 341-42, 100 S.Ct. 1708, 1714-15, 64 L.Ed.2d 333 (1980) (review of mixed determinations of fact and law on federal habeas corpus). Thus we separate the distinct factual and legal elements of the trial court’s determination of an ultimate fact and apply the appropriate standard to each component.
We employ the same approach when we review a jury’s findings on a mixed question, but the distinction is more easily understood in that context because of the strict division of competences between the jury and the trial court and the intercession of the seventh amendment. If a jury finds that a party has abandoned an interest in property, we review the court’s jury instructions to determine whether the court erred in its explanation of the law, and if we find no error we examine the record to determine whether the evidence was sufficient to justify a reasonable mind in drawing the factual inferences underlying the conclusion. With the sole exception of the different review standard of judicial findings expressed by the phrase “clearly erroneous,” we go through the same process when the court sits as both finder of 'the facts and arbiter of the law.
B.
The parties to this appeal do not challenge the bankruptcy and district courts’ legal determinations relating to the ultimate fact of abandonment. All agree that culm “may be abandoned . .. when it is left on the land of another with the intention of abandoning it.” Llewellyn v. Philadelphia & Reading C. & I. Co., 308 Pa. at 502, 162 A. at 430; see also Fidelity-Philadelphia Trust Co. v. Lehigh Valley Coal Co., 294 Pa. 47, 143 A. 474 (1928). The sole question on which this case turns is whether Hughes intended to abandon the Cassandra Pile.
We agree with the Pennsylvania Supreme Court that “intention may and indeed often must be inferred from acts.” *104 Llewellyn, 308 Pa. at 502, 162 A. at 430. In this case the bankruptcy judge inferred from the undisputed historical facts that Hughes intended to abandon the culm pile. We do not, however, accept appellee’s argument that the inferential status of the bankruptcy judge’s finding subjects it to plenary review on appeal to the district court. A person’s state of mind is a narrative or historical fact, albeit one that often must be determined by drawing inferences from evidence of his conduct and the surrounding circumstances. Drawing such inferences does not, however, require application of a legal standard to historical facts; it demands application of logic and human experience, see Sweeney v. Texaco, 637 F.2d at 116, and the inference drawn as to intent is a statement of fact and not a holding of law. See, e.g., United States v. Yellow Cab Co., 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150 (1949); Krasnov v. Dinan, 465 F.2d 1298, 1299-1300 (3d Cir. 1972). Therefore, since the inference relates only to a factual component, the review is by the “clearly erroneous” standard.[7] See United States v. United States Gypsum Co., 333 U.S. at 394, 68 S.Ct. at 541 (“In so far as this finding and others . . . are inferences drawn from documents or undisputed facts . . ., Rule 52(a) of the Rules of Civil Procedure is applicable.”)
VI.
The bankruptcy court derived its finding of intent to abandon from the following undisputed basic facts: Upon termination of its deep mining operation, Hughes razed its buildings and cleaning plant and removed its railroad tracks and its generation station. Hughes sold “red dog” from the Cassandra Pile on several occasions; but it never advertised such material for sale to the public, by signs on the pile or otherwise. Hughes made no effort to prevent or to halt burning of the refuse pile, and the pile burned extensively. Reclamation of culm piles was not a common practice until the 1960’s, several years after Hughes’ mining operations had ceased. Hughes did not list or refer to the Cassandra Pile in 1970 when it prepared a list of all its assets in connection with a proposed bulk sale.
The district court did not set aside any of these basic findings, and appellees do not ask us to do so on this appeal. The district court chose, however, to emphasize other facts not mentioned in the bankruptcy court’s opinion and to draw opposing inferences from the record. In doing so, the district court erred. A reviewing court may not substitute its own findings for those of the primary tribunal merely because it finds other inferences more likely. Provided that the legal component was correctly chosen, interpreted, and applied by the trial court,
[i]t is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supporting evidentiary data. Unless the re *105 viewing court establishes the existence of either of these factors, it may not alter the facts found by the trial court. To hold otherwise would be to permit a substitution by the reviewing court of its finding for that of the trial court, and there is no existing authority for this in the federal judicial system, either by American common law tradition or by rule and statute.
Krasnov v. Dinan, 465 F.2d at 1302-03. We have reviewed the finding of the bankruptcy court according to the standard announced in Krasnov, and we conclude that the district court erred in holding it clearly erroneous. The finding of intent to abandon was not absolutely compelled by the evidence, but this is not the test: rather the test is whether it was permissible, i.e., rationally related to the undisputed basic findings.[8] We cannot affirm the district court’s decision to set aside the finding of the bankruptcy court without violating the traditional allocation of differing competences to the various levels of our hierarchical judicial system. The inferences drawn by the bankruptcy court were permissible because they were reasonable, and the district court erred when it substituted its own inferences on appeal.
VII.
The judgment of the district court will be reversed and the cause remanded to the district court with a direction that it enter an order affirming the judgment of the bankruptcy court.

. The automatic stay in this case is governed by Rule 11—44 because Universal’s petition was filed on October 27, 1978. Section 362(a)(1) of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 362, imposes an automatic stay of most judicial proceedings against the debtor in all bankruptcy cases commenced on or after the effective date of the Reform Act, October 1, 1979.

. The two pertinent additions to Title 28, § 1334 and § 1293, are not effective until April 1, 1984; however, a transition provision of the Bankruptcy Reform Act vests the district courts and courts of appeals with the appellate authority they will have after April 1, 1984. Section 405(c)(2) of the Bankruptcy Reform Act of 1978, 11 U.S.C.A.App. at 137.

. The parties relied on 28 U.S.C. § 1291 as a source of appellate jurisdiction. We do not consider whether the district court’s decision was “final” within the meaning of § 1291, because we construe the 1978 Amendments as providing a comprehensive and exclusive schema for jurisdiction of bankruptcy appeals.

. The Court in Cox Broadcasting relied in part on the fact that “the litigation could be terminated by our decision on the merits.” 420 U.S. at 486, 95 S.Ct. at 1041. In Radio Station WOW, the Court noted that
a judgment directing immediate delivery of physical property is reviewable and is to be deemed dissociated from a provision for an accounting even though that is decreed in the same order. In effect, such a controversy is a multiple litigation allowing review of the adjudication which is concluded because it is independent of, and unaffected by, another litigation with which it happens to be entangled.
326 U.S. at 126, 65 S.Ct. at 1479.

. The district court’s choice of a standard of review is of course a decision of law, and our review of that decision is plenary.

. Bankruptcy Rule 810 requires the district court to “accept the referee’s findings of fact unless they are clearly erroneous.” The standard is identical to that prescribed by Fed.R.Civ.P. 52(a) for appellate review of the findings of a district court, and decisions construing Rule 52(a) are fully applicable in this context. We reject appellant’s “gross miscarriage of justice” standard as facially inconsistent with Rule 810.

. Appellee, relying on dicta in In re Pioch, 235 F.2d 903 (3d Cir. 1956), argues that intent to abandon is “an ultimate finding of fact and . . . that such a finding is but a legal inference from other facts and as such is subject to review free of the restraining impact of the so-called ‘clearly erroneous rule’ applicable to ordinary* findings of fact by the trial court.” Id. at 905 (footnotes omitted). Chapter VIII. C. of our Internal Operating Procedures forbids a panel to overrule a published opinion of a previous panel. We are constrained to hold, however, that the Pioch dicta is not and has never been law in this court and therefore never achieved the jurisprudential quality of a decision. Numerous decisions announced both before and after Pioch have employed the “clearly erroneous” standard in reviewing findings as to intent. See, e.g., Altman v. Altman, 653 F.2d 755, 758-59 (3d Cir. 1981); McNeil v. McDonough, 648 F.2d 178, 180-81 (3d Cir. 1981) (per curiam); Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 400 (3d Cir. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed. 753 (1977); Asphalt Industries, Inc. v. C.I.R., 384 F.2d 229, 233 (3d Cir. 1967); Smith v. Onyx Oil & Chemical Co., 218 F.2d 104, 108 & n.2 (3d Cir. 1955). Even Judge Kalodner, the author of Pioch, appears later to have retreated from the position taken in that opinion. See Fine Fashions, Inc. v. Gross, 290 F.2d 871, 875 (3d Cir.) (Kalodner, J., dissenting), cert. denied, 368 U.S. 896, 82 S.Ct. 175, 7 L.Ed.2d 93 (1961); In re Ginsburg, 255 F.2d 358, 364 (3d Cir. 1958).

. The district court relied on evidence that Hughes regularly inspected the pile; carried liability insurance on the pile; checked the tax levy on the Tiley Tract each year and paid taxes in 1900, 1906, and 1954; and moved quickly to halt Universal’s salvage operations by seeking an injunction in state court. Appellant responds by noting that Hughes carried a “blanket policy” of insurance on all of its property and not a separate policy on the Cassandra Pile, and that the pile is “a veritable mountain. . .•. visible from the highway and other roads, and is impossible not to inspect for any person living in this area.” Brief for Appellant at 18. We need not resolve this controversy, however, because even if we assume that the additional evidence cited by the district court was fully credible, the bankruptcy court’s finding is rationally related to the evidence presented by the entire record, and thus it is not clearly erroneous.