In re Mary E. LASICH, Debtor.

Marion LEDONNE, Executrix of the Estate of William J. Stiehler, Deceased, Plaintiff,

v.

Mary E. LASICH, Defendant.

Civ. A. No. 82–439.

United States District Court, W.D. Pennsylvania.

Nov. 16, 1982.

Henry E. Rea, Jr., Pittsburgh, Pa., for plaintiff.

Mark L. Glosser, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

BLOCH, District Judge.

This is an appeal from the United States Bankruptcy Court for the Western District of Pennsylvania. Plaintiff, Marion LeDonne, is an individual resident of Jefferson Borough, Pennsylvania, and the executrix of the Estate of William J. Stiehler. Defendant, Mary E. Lasich, is also an individual resident of Jefferson Borough, Pennsylvania, and the bankrupt in the bankruptcy proceeding. In passing on an appeal from the Bankruptcy Court, the District Court must accept the Bankruptcy Judge's findings of fact, unless those findings are clearly erroneous. Rule of Bankruptcy Procedure 810; *In re Hollock*, 1 B.R. 212, 215 (M.D.Pa.1979). After reviewing the record in this case, this Court finds that the Bankruptcy Judge's factfindings are not clearly erroneous. The facts, as established by the Bankruptcy Court in this case, follow.

"This case comes before the Court on a Complaint objecting to the dischargeability of a debt. The Debtor filed her Petition in Bankruptcy in March of 1980. In her Petition she lists one debt on her A–3 Schedules of Unsecured Debts. That debt is a Judgment awarded in the Court of Common Pleas of Allegheny County, Pennsylvania in favor of the Plaintiff in the amount of $19,933.32. The Plaintiff seeks to have this judgment declared non-dischargeable.

. . . The parties to this action agreed to submit this case to the Court for decision based on the transcript of the state court proceedings and written and oral arguments.

The decedent died on December 18, 1976. Both the Plaintiff and the Debtor were neighbors of the decedent. The testimony revealed that the Debtor and her family moved into the neighborhood approximately five years prior to the decedent's death. The neighborhood consisted of houses on acre lots. The neighbors were apparently not overly friendly to one another, but the Debtor and her family became friendly with the decedent and his wife because the decedent who was retired spent quite a bit of time with the Debtor's son.

After the decedent's wife had died, the Debtor spent several hours a day taking care of the decedent. After the decedent's wife died, the Plaintiff and the Debtor cleaned the decedent's house and discovered approximately $8,000.00 in cash. This cash was given to the decedent.

The Plaintiff testified that after this incident she did not see much of the decedent. She testified that she tried to visit the decedent's house three times in October, 1976 but the Debtor refused her admittance to the house except once when the decedent was asleep.

The decedent had been suffering from the effects of alcohol prior to his wife's death. The decedent's brother testified that he visited his brother after the decedent's wife had died and the Debtor came in and brought him several glasses of liquor. Similarly the Plaintiff testified that when she went to visit the decedent during the same period she found him asleep and there was an overpowering odor of liquor in the house.

The decedent was admitted to the hospital on November 4, 1976 and he died there on December 18, 1976. The hospital records show that the decedent was admitted to the hospital with alcoholism withdrawal symptoms. On November 16, the decedent suffered respiratory arrest and was described as comatose. The patient remained comatose until he died.

The Plaintiff also called one of the nurses who attended the decedent when he was in the hospital. The nurse testified that on November 6, 1976 the decedent became confused and aggressive and had to be restrained by being tied to his bed. This condition continued through November 16. On November 13, the nurse had noted that the decedent was talking incoherently and was yelling for Mary, accusing her of stealing his money. The Debtor's first name is Mary.

The Debtor testified that she had never taken any cash from the decedent and denied buying him more than two fifths of whiskey during the two months that she acted as the decedent's caretaker.

The $8,000.00 in cash was never found in the decedent's home after his death. The principal basis of the complaint was that monies were given to the Debtor by check in various amounts on different dates after the decedent was admitted to the hospital as follows:

| Amount | Date |
| --- | --- |
| 1. $600.00 check from decedent | 11/6/76 |
| 2. $6,081.53 check from decedent | 11/15/76 |
| 3. $12,510.10 monies from savings account of decedent transferred to Debtor | 11/19/76 |
| 4. $520.94 monies from account of decedent transferred to Debtor." | 11/22/76 |

Although the District Court must accept the Bankruptcy Court's findings of fact unless they are clearly erroneous, the clearly erroneous standard does not apply to the Bankruptcy Court's conclusions of law; that is, the reviewing Court must make an independent determination on the legal issues. *In re Hollock, supra,* at 215. The Bankruptcy Court determined that the judgment debt in this case is non-dischargeable for the following reasons: (1) 11 U.S.C. § 523(a)(2)(A), which provides that a debt is not dischargeable if money is obtained by false pretenses, a false representation, or actual fraud; (2) 11 U.S.C. § 523(a)(4), which provides that a debt is not dischargeable if money is obtained by fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; and (3) 11 U.S.C. § 523(a)(6), which provides that a debt is not discharged for willful and malicious injury by the debtor to another entity or to the property of another entity. The Court believes that the Bankruptcy Court properly held that this debt is not dischargeable and, therefore, affirms the Order of the Bankruptcy Court dated February 16, 1982.

1. Although many of the cases in this opinion predate the 1978 Bankruptcy Code, the discussion in those cases concerning the right to

As stated, plaintiff filed this adversary proceeding, within the Bankruptcy, objecting to the discharge of the judgment debt of $19,933.32 obtained by the plaintiff in an action in the Court of Common Pleas of Allegheny County. The plaintiff contends that defendant fraudulently obtained the amount of money contained in the judgment from the decedent, William J. Stiehler, prior to his death. The pertinent section of the Bankruptcy Code is 11 U.S.C. § 523(a)(2)(A), which provides:

(a) A discharge under § 727, 1141, or 1128(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or *actual fraud,* other than a statement respecting the debtor's or an insider's financial condition;. (Emphasis added).

The plaintiff contends that defendant received the amount in question from the decedent through actual fraud. The defendant, on the other hand, contends that the state court proceeding was merely an assumpsit action and that the transcript of that proceeding establishes that, at most, defendant's actions constituted constructive fraud, which is not sufficient to bar discharge under the aforementioned provision.

The right to a discharge in bankruptcy is purely a statutory right, and the statutory provision must be construed strictly against the objecting party and liberally in favor of the bankrupt. *In re Pioch,* 235 F.2d 903, 905 (3d Cir.1956);[1] *In re Vail,* 1 B.R. 132, 133 (Bkrtcy., E.D.Pa.1979). The burden of proof is on the objecting party to prevent the bankrupt's discharge. *In re Pioch, supra,* at 905; *Lodi Trust Co. v. Cohn,* 108 F.2d 26 (3d Cir.1939). To bar discharge on the basis of actual fraud pursuant to § 523(a)(2)(A):

discharge and actual fraud is still applicable to 11 U.S.C. § 523(a)(2)(A).

" '[t]here must be an actual fraudulent intent on the part of the bankrupt to hinder, delay or defraud his creditors and constructive intent is not sufficient; the reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectual; speculation cannot be substituted for proof and the requirement is for probative facts capable of supporting, with reason, the conclusions of the trier of facts; . . . .' "

*In re Imants Seperis,* 454 F.2d 195, 196 (3d Cir.1972), quoting *In re Pioch, supra,* at 905–906. The Third Circuit further stated that " 'it is not so much the acts of the bankrupt that will prevent his discharge, as it is the intent with which he acts.' " *Id.* Thus, the Court must review the evidence and record in this case to determine whether the intent necessary for actual fraud is present.

The Court notes that the United States District Court for the Eastern District of Pennsylvania was confronted with an analogous situation in *Fierman v. Lazarus,* 361 F.Supp. 477 (E.D.Pa.1973), *aff'd. without opinion,* 493 F.2d 1400 (3d Cir.1974). In *Fierman,* the plaintiff brought an action against the defendants in the Supreme Court of New York. In the complaint filed in the New York action, plaintiff claimed that defendants owed her approximately $40,000, taken from her by defendants' fraud, misrepresentation, threats, breach of trust, breach of duty, and infliction of bodily harm. Defendants denied the allegations of the complaint, but admitted to receiving $27,100 from the plaintiff for the purpose of purchasing a home. The Supreme Court of New York considered all of the pleadings, affidavits, and motions in the case, and thereupon granted a motion for summary judgment to plaintiff for $27,100. Defendants never appealed from that judgment, but did file voluntary petitions in bankruptcy in the United States District Court for the Eastern District of New York. The defendants listed the judgment as a debt to be discharged in the bankruptcy. Plaintiff subsequently challenged the discharge of that debt, alleging that discharge should be barred because the money was received through fraudulent conduct. In reviewing the case, the District Court stated that:

> Where a judgment is involved and bankruptcy is pleaded as a bar to plaintiff's action on the judgment, the Court is not concluded by the form of judgment, by recitals of the judgment, by the form of action nor even by the allegations of plaintiff's complaint but may resort to and examine the entire record to determine the character of the claim and whether it comes within the perview of 11 U.S.C. § 35, [present section 11 U.S.C. § 523].

*Id.* at 480. The District Court concluded that it was convinced, by a preponderance of the evidence, that the judgment of the Supreme Court of New York was based on the existence of actual fraud necessary to bar discharge. As noted above, the Third Circuit affirmed the District Court opinion and order without opinion.

Accordingly, this Court looks to the entire record to determine whether plaintiff's claim in the case at hand comes within the perview of § 523(a)(2)(A). The record in this case indicates that the decedent drafted four checks, payable to either himself or cash, between November 6, 1976 and November 22, 1976, in the total amount of $19,722.57. *See* testimony of Marion LeDonne, transcript of proceedings in the Court of Common Pleas of Allegheny County, pp. 40–43. Further, during the period of November 6, 1976 and November 22, 1976, the plaintiff was hospitalized and very confused and irrational. In fact, the decedent was tied in his bed during part of this period because of his irrational behavior. More importantly, the defendant was comatose from November 16th until his death in December of 1976. *See* testimony of Karen Sue Kaloz, transcript of proceedings in the Court of Common Pleas of Allegheny County, pp. 88–106. The defendant took the decedent to the hospital, restricted visitation of him by others, and was his only outside visitor during the period of November 6, 1976 through November 22, 1976.

*See* testimony of Mary Lasich, transcript of proceedings in the Court of Common Pleas of Allegheny County, pp. 139–140, and testimony of Marion LeDonne, transcript of proceedings in Court of Common Pleas of Allegheny County, pp. 38–39. The defendant had a close relationship with the decedent in the last few years of his life, and especially in the last two months, October and November of 1976, of his life. *See generally* transcript of proceedings in the Court of Common Pleas of Allegheny County. Additionally, the four checks written in November of 1976 were all endorsed by the defendant. *See* testimony of Marion LeDonne, transcript of proceedings in the Court of Common Pleas of Allegheny County, pp. 40–43. The cash from those checks was not found after the death of the decedent. *See* testimony of Marion LeDonne, transcript of proceedings in the Court of Common Pleas of Allegheny County, pp. 60–61. Finally, in the last few days of his life and while hospitalized, the defendant yelled for "Mary" (the defendant's first name) and accused her of stealing his money. *See* testimony of Karen Sue Kaloz, transcript of proceedings in the Court of Common Pleas of Allegheny County, p. 97. The Court believes that these facts establish the intent necessary to constitute actual fraud and thereby bar discharge of the debt pursuant to 11 U.S.C. § 523(a)(2)(A). Accordingly, this Court affirms the decision of the Bankruptcy Court.

In concluding, the Court dismisses a minor point raised by the defendant in her brief. The defendant asserts that the Bankruptcy Court's memorandum opinion and order found, as a matter of law, that the debtor should be denied discharge not only on the basis of actual fraud, but also on the basis of larceny (11 U.S.C. § 523(a)(4)) and willful and malicious injury to the property of another (11 U.S.C. § 523(a)(6)). The defendant further asserts that a pretrial order in the Bankruptcy Court restricted the issue for litigation to the barring of discharge on the basis of actual fraud, 11 U.S.C. § 523(a)(2)(A), and that the Bankruptcy Court committed error in considering grounds for barring discharge beyond those provided for in the pretrial order. *See Deakyne v. Commissioners of Lewes,* 416 F.2d 290, 295 n. 7 (3d Cir.1969); *Basista v. Weir,* 340 F.2d 74, 85 (3d Cir.1965); Fed.R.Civ.P. 16 (pretrial order limits the issues for trial). The Court has no way of ascertaining whether defendant's assertion is correct since the pretrial order was not made a part of the record for appeal. However, even if defendant's assertion is correct, it has no merit because this Court affirmed the finding of actual fraud pursuant to § 523(a)(2)(A), and actual fraud, in itself, is sufficient to bar discharge.

An appropriate Order will be issued.