**RUTAS AEREAS NACIONALES, S. A. (RANSA), Appellant,**

v.

**UNITED STATES of America,**
**Appellee (two cases).**

**Nos. 23085, 23219.**

United States Court of Appeals
Fifth Circuit.

Feb. 24, 1967.

---

13.  337 U.S. at 761, 69 S.Ct. at 1278.

14.  337 U.S. at 761–762, 69 S.Ct. at 1278.

Arthur B. Cunningham, Philip T. Weinstein, Miami, Fla., for appellant.

Richard M. Roberts, Harry Marselli, Lee A. Jackson, Washington, D. C., William A. Meadows, Jr., U. S. Atty., Miami, Fla., Mitchell Rogovin, I. Henry Kutz, Stephen H. Paley, Washington, D. C., Alfred E. Sapp, Asst. U. S. Atty., Lavinia L. Redd, Asst. U. S. Atty., for appellee.

Before TUTTLE, Chief Judge, and BELL and GOLDBERG, Circuit Judges.

TUTTLE, Chief Judge:

These appeals represent an effort by the taxpayer, a Venezuelan air carrier, to test the validity of an assessment made against it for income taxes before payment of the tax. The privilege of having such pre-payment adjudication, of course, normally is found in the right given by the provisions of 26 U.S.C.A. Sections 6212 and 6213. These sections give the taxpayer a period of 90 days (150 days for a non-resident of the United States) after receiving a notice of deficiency within which the taxpayer may file a petition for a redetermination of the deficiency with the Tax Court of the United States. This taxpayer has not been afforded the opportunity of such a petition to the Tax Court, and it considers itself vulnerable to proceedings by the United States to collect the deficiency without further ado, and has sought relief in the district court by a suit to enjoin the collection of the tax,

under the specific authority granted in Section 6213, which prohibits the assessment of a deficiency without the mailing of deficiency notice giving the taxpayer the opportunity to appeal to the Tax Court "Except as otherwise provided in Section 6861," and except as limited by Section 6871(a) in the case of bankruptcy of, or the appointment of a receiver for, the taxpayer.

The procedural situation at the time of the entry of the two orders here appealed from is involved, but it presents a fairly simple picture. On July 11, 1961, in a proceeding entitled Cauley and Martin, Inc. v. Rutas Aereas Nacionales, S.A., the Circuit Court for Dade County, Florida, in response to a creditor's bill, appointed a receiver for the assets of appellant (hereinafter RANSA). The State court enjoined the taxpayer from removing any of its assets from the State of Florida and appointed one Perlmutter as receiver of all its assets located in that state. RANSA, on July 20, 1960, removed the proceedings to the federal court. The federal court confirmed the appointment of the receiver, theretofore appointed by the state court. On August 5, 1960, the United States made an assessment in the amount of $216,180.11 against the receiver for unpaid corporate income taxes and penalties owing by taxpayer, without mailing to the taxpayer a notice of deficiency. A proof of claim was then filed by the Government on August 15, 1960.

Thereafter, negotiations were had between the Venezuelan government and the taxpayer's creditors, by virtue of which the latter would receive certain notes issued by taxpayer and guaranteed jointly by the Venezuelan government and several Venezuelan banks. This proposal was acceptable to a majority of the creditors. The United States did not accept this offer, and did not participate in the reorganization plan, presumably because the government's lien for income taxes would not be affected by any composition with creditors. On September 8, 1960, the district court approved the plan, announcing, however, that its approval was subject to the taxpayer, the Venezuelan government and the receiver, working out a stipulation with the United States government regarding the government's claim arising from income taxes allegedly due the taxpayer. This was not acceptable to the Venezuelan government, and the district court then, nevertheless, authorized the turning over of all of the assets to Captain Everett Jones, a vice-president of the taxpayer, and relieved Perlmutter of all further responsibilities in the operation of the company. Perlmutter was paid a receiver's fee, and the receivership was ordered to continue only for the purpose of filing his final accounting.

Representatives of RANSA then entered into formal negotiations with the officers of the International Operations of the Internal Revenue Service, as a result of which notice of adjustment was issued on August 10, 1962, reducing the assessed income tax penalties and interest against taxpayer to the total of approximately $88,374.91. The receiver died prior to his discharge. Other creditors intervened, and moved for the appointment of a receiver to succeed Mr. Perlmutter. This motion was denied in 1963 and no other receiver was ever appointed by the federal court. The state court appointed a successor receiver, but this appointment was later overturned by the state appellate court.

On July 10, 1964, RANSA filed a motion for the United States to show cause why it should not be required to file a claim in the Cauley and Martin proceedings for taxes allegedly due from the taxpayer. The United States filed such claim, whereupon the taxpayer filed an answer, set-off, recoupment and counter-claim for certain excise taxes allegedly overpaid to the United States. The United States, on March 1, 1965, moved to dismiss the counter-claim and strike the defense and prayer for recoupment and set-off. On March 16, 1965, this motion coming on for hearing, the district court, *sua sponte*, dismissed without prejudice the claim of taxpayer, stating that it was "of the opinion that it

is without jurisdiction to entertain the claim of the United States, heretofore filed in this cause, as well as the answer and counterclaim filed in response thereto."

The dismissal of this action for lack of jurisdiction was appealed by RANSA, and is here in Case Number 23,085.

Thereafter, on May 4, 1965, taxpayer filed a complaint in the United States district court for the Southern District of Florida, seeking to enjoin the United States from attempting to "collect and levy upon, seize or interfere with, the assets of the plaintiffs, by reason of the purported assessments for income taxes." This complaint was based on the theory that the assessments made under Section 6871 of the Internal Revenue Code of 1954, (which assessments may be made immediately upon the declaration of bankruptcy of the appointment of receiver) were erroneous inasmuch as no receiver was any longer in existence and there was thus no other forum in which the taxpayer could have a pre-payment trial of the correctness of the assessment.

On motion of the United States, the trial court dismissed the complaint for injunction, finding that the assessments had been made under Section 6871(a), that they "were made during a receivership proceeding entitled Cauley and Martin v. Rutas Aereas Nacionales, S.A., then pending in the United States district court for the Southern District of Florida," and "that the United States of America took action to enforce said assessment by filing its claims which have since then been dismissed without prejudice [by the trial court] because of the termination of said receivership." The trial court determined that the remedy of injunction was barred to RANSA "by virtue of the provisions of Section 7421(a) and that the exceptions embodied therein pertaining to Sections 6212(a) and (c), and 6213(a) [the provisions requiring the giving of 90-day notice and the right of appeal to the Tax Court], of the Internal Revenue Code of 1954, are not applicable in this case, be-

cause of the application of the provision of Section 6871(a) [the provision that authorizes the government to issue an assessment immediately without notice in the event of a receivership]." Taxpayer appeals from this judgment of dismissal in Case Number 23,219.

■ As this court has pointed out in Abel v. Campbell, 5 Cir., 334 F.2d 339, the provisions of the Internal Revenue Code having to do with the filing of a claim for income taxes in a bankruptcy or receivership proceeding, provides for the taxpayer a substitute tribunal which, if he acts during the pendency of the proceedings, gives him the same protection with respect to an adjudication prior to payment that is otherwise afforded to those taxpayers who are entitled to file a petition in the Tax Court of the United States.

In Abel, we said, "Sections 6871–6873 present an integrated procedure designed to protect the Government's interest in bankruptcy property. At the same time, the bankrupt taxpayer's interest is also protected by the trustee and by the bankrupt himself. The merits of the deficiency can be fully aired in that bankruptcy proceedings. Because the tax liability survives the adjudication in bankruptcy, the bankrupt has standing to attack the proof of claim before the Referee and a right to appeal an adverse judgment as would an ordinary creditor under Chapter 6 of the Bankruptcy Act, 11 U.S.C. §§ 91–96." 334 F.2d 339, 341.

■ It will be noted that what we said there is that "the bankrupt has standing to attack the proof of claim before the referee." In a receivership, a parallel right would exist to attack the proof of claim pending in the receivership before a trial court. Here, however, without in any manner attempting to have an adjudication as to the correctness of the Government's claim for taxes, the taxpayer proceeded to make an arrangement satisfactory to all of the other creditors, which resulted in an order by the receivership court, transferring custody of all of the assets back to the debtor-taxpayer.

There is no doubt, in line with what is said in *Abel*, that if RANSA had moved to attack the proof of claim filed by the United States government while the receivership was subsisting, it would have had the right to have the trial court pass upon the government's claim. However, when, instead of seeking to contest the tax claim, RANSA made a composition agreement with all creditors other than the United States and then sought to have the property all removed from the receivership, all of which was accomplished by the entering of an order to that effect by the trial court, the taxpayer finds itself in very much the same position as did the taxpayer in Jamy Corporation v. Riddell, 9 Cir., 337 F.2d 11. There, a family corporation was put into receivership because of a marital breakup; a receiver was appointed by the state court on May 20, 1959. Thereafter, in November, 1959, the United States caused two assessments for taxes to be made against the corporation. This was followed by a claim of the United States in the receivership proceeding covering the tax assessments. What happened then is described by the court: "As abruptly as the receivership started, it came to an end. The corporation was not dissolved. The husband and wife adjusted their business differences, filed a stipulation for termination of the receivership, and the assets of the corporation were returned to it. In a way, in the vernacular, the receiver was left 'high and dry.' Freed of the taxpayer's insulation in the form of the receivership, the director began to start to make ready to collect his old assessments. The taxpayer rushed to federal district court seeking an injunction." 337 F.2d 11, 13.

In these circumstances, the court then said, after explaining that the Internal Revenue Code Provisions authorize a hearing in a bankruptcy or receivership court, "With our determination that the corporation was entitled to a review in the receivership court, and the receivership being terminated by the corporation acting through its sole stockholders, *they thus deprived their corporation of any opportunity of review before payment.*" (Emphasis added.) 337 F.2d 11, 13.

Here, the district court has twice determined that the receivership had terminated prior to the effort made by RANSA to cause the Government to litigate its tax claim in the district court in the receivership proceedings. Just as occurred in the *Jamy Corporation* case, on motion of the taxpayer the assets were all returned to it. Here, too, the receiver was left high and dry so far as any assets were left for him to operate or "receive". Thus, "[f]reed of the taxpayer's insulation in the form of the receivership," the United States was at liberty to "start to make ready to collect [its] old assessments."

It is plain here that the taxpayer had every opportunity to have the same pre-collection determination of the validity of the tax that is available to a normal taxpayer in the Tax Court. Just as a taxpayer who has received a 90-day notice before assessment forever bars himself from the right to petition for a redetermination in the Tax Court if he fails to move within 90 days, so, here, a failure by the taxpayer, RANSA, to move to attack the Government's claim for taxes while the receivership was still pending, stands as a bar to his right to have a pre-collection determination of the validity of the tax in these proceedings.

There is no provision in the Internal Revenue Code for a declaratory judgment by a court as to the validity of an assessment once made. Here, the assessment was made strictly in accordance with the provisions of the statute where a receivership exists. Relief, similar to that afforded non-distressed taxpayers, was available to this taxpayer by merely moving to attack the Government's claim as filed. Its failure to do this during the existence of the receivership amounted to as valid a waiver of its right to a pre-collection determination as the running of the 90-day period by a taxpayer in more normal circumstances.

We conclude that the trial court did not err either in dismissing the Government's original claim and the taxpayer's counterclaim and set-off in the receivership suit, long after the death of the receiver, because of termination of the receivership, or in dismissing the complaint for injunction in view of the fact that such an injunction, in case of the filing of the assessment and claim in bankruptcy, prevents the exception contained in Sections 6212 and 6213 from coming into play.

Long before the taxpayer here had moved to cause the United States to file its later claim in the receivership proceedings, the trial court had entered its order transferring all of the property back to the taxpayer for operation and the receiver had died. At the time of his death, the only obligation was to file his final report with the court. The court's order had provided that his full compensation be paid, and he was to receive no further compensation. Thus, we think it was entirely within the power of the trial court, which had the receivership matter before it, to determine that it had no further jurisdiction over the matter of this claim for federal income taxes, which had never been "attacked," or brought into controversy by the taxpayer for nearly four years after the assets had all been transferred back to the debtor. There could be no receivership without a receiver. Here there was none at the time the taxpayer belatedly sought to require the Government to submit its assessments for income taxes to the district court for approval or rejection before proceeding to levy the assessment or otherwise collect the amount covered by the assessment as subsequently modified.

We think the judgment of the trial court *sua sponte* dismissing the Government's claim for taxes in the "receivership proceedings" and the counter-claim and set-off filed in that matter by the taxpayer, together with the judgment of the trial court dismissing the later suit for an injunction were both correct, and they are both affirmed.