**In the Matter of RESYN CORPORA-TION, Appellant/Cross–Appellee,**

v.

**UNITED STATES of America, Appellee/Cross–Appellant.**

**Nos. 87–5134, 87–5162.**

United States Court of Appeals, Third Circuit.

Argued Jan. 8, 1988.

Decided June 30, 1988.

Herbert L. Zuckerman (argued), Robert J. Alter, Sills, Beck, Cummis, Zuckerman, Radin, Tischman & Epstein, P.A., Newark, N.J., for appellant/cross-appellee.

Michael L. Paup, Wynette J. Hewett, John J. Boyle (argued), Tax Div., Dept. of Justice, Washington, D.C., for appellee/cross-appellant.

Before SEITZ, HUTCHINSON, and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

Appellant Resyn Corporation appeals (at 87–5134) from an order of the United States District Court for the District of New Jersey, essentially affirming an order of the United States Bankruptcy Court. The district court's order awarded the government judgment for income tax deficiencies for the years 1963 through 1969 in the net amount (after payment of $452,346) of $180,789, plus pre-petition interest on the tax deficiencies in the amount of $278,-018. The district court's order also awarded judgment for post-petition fraud penalties of $571,574. The district court, however, denied the government post-petition interest on the fraud penalties in the amount of $420,546. Resyn appeals from the order affirming the tax deficiencies awarded to the government; the government appeals (at 87–5162) from the denial of post-petition interest on the fraud penalties.

We have reviewed Resyn's arguments with respect to its appeal and are satisfied that the district court properly affirmed the bankruptcy court in upholding the government's position with respect to Resyn's tax deficiencies. However, we have determined that the district court erred in denying the government post-petition interest

on the fraud penalties from the date of assessment, notice and demand.

We will thus affirm the district court's order with respect to Resyn's appeal but will reverse and remand with respect to the government's cross-appeal.

## I.

This case arises out of bankruptcy proceedings initiated by Resyn, a New Jersey Corporation engaged in the purchase, manufacture, and sale of resins and other chemicals and oils used to manufacture paint supplies. From 1963 until the filing of its Chapter XI petition on September 3, 1970, Resyn was owned and operated by its president, and sole shareholder, Leo Levitt ("Levitt").

Between November 1971 and February 1973, the Internal Revenue Service filed proofs of claim against Resyn for corporate income tax deficiencies and assessed Resyn for 50% penalties for tax fraud that occurred during the six year period from 1963 to 1969. In 1977, Resyn and the IRS entered into an agreement whereby taxes of $416,409.04, exclusive of penalties, for the years 1968 through 1970, would become payable when Resyn's plan of arrangement was confirmed by the bankruptcy court. The agreement also placed a cap of $1,183,-590.96 on Resyn's potential tax liability for the years 1963 through 1970. The agreement also provided that Resyn could contest this latter assessment for unpaid taxes and penalties.

In November 1981, following a six-day trial, the bankruptcy court allowed the deficiencies claimed by the government and held that Resyn had committed tax fraud during the years 1963 through 1970. The fraud was perpetrated by Levitt, Resyn's president, and was designed to shield and conceal income that would otherwise have been subjected to corporate income taxes.

In its November 22, 1982 opinion, the district court described Levitt's scheme as follows:

Levitt's scheme involved the establishment of two fictitious companies: Polymer Chemicals and Chemical Traders.

Bank accounts were opened for both companies. Harry Levenson, a public accountant employed by Resyn, was the authorized signatory for the Polymer Chemicals account. Leo Levitt was the signatory for the Chemical Traders account. Chemical Traders was supposedly established to buy, sell and trade chemicals. Its actual function, however, was to ultimately divert income belonging to Resyn into the possession of Leo Levitt. Under the scheme, Resyn's customers would be billed on Chemical Trader's invoices. On the invoices, instructions were given to customers to remit payment to the home of Leo Levitt. Through this facet of the scheme, a substantial amount of revenue earned by Resyn went unreported.

Another facet of the scheme involved the diversion of rebates. In the chemical industry, discounts are often given to bulk purchasers. Resyn often purchased large volumes of chemicals and thereby earned substantial discounts. Instead of forwarding the rebate check directly to Resyn, companies were instructed to make checks payable to Chemical Traders and to send the checks to Levitt's home. These checks were deposited by Levitt in the Chemical Traders account, over which Levitt had control. Through this facet of the scheme, Levitt was again able to unlawfully divert monies owed to Resyn away from the company.

There was yet a third facet to Levitt's scheme. Polymer Chemicals was purportedly established as a chemical supply company. In fact, however, the company was non-existent. Invoices were printed with Polymer's name and were submitted to Resyn for payment. Resyn paid the bills to Polymer and the monies were deposited in Polymer's account. Levitt then had Resyn's accountant, Harry Levenson, who was the signatory of the account, draw checks in blank. These checks were completed by Levitt and the funds were withdrawn by him from the account. Through this device Resyn artificially increased its costs of goods sold and thereby reduced reported income.

In determining how much income had been unlawfully diverted by Levitt, the government did not have available to it the records of the Resyn Corporation. These records had disappeared without explanation. Therefore, to compute the amount of income which had not been reported, all deposits made to the Chemical Traders account were added together and were treated as unreported income on which taxes were owed. In addition, the negotiated checks of the Polymer Chemicals were added together to reduce the cost of goods sold and to increase the amount of unreported income.

App. at 728–30.

On appeal, the district court affirmed the bankruptcy court's findings of fact on the basis that they were not clearly erroneous.[1]

In October 1986, the district court entered an order awarding the government tax deficiencies, pre- and post-petition interest on those deficiencies, fraud penalties and interest on those penalties running from the date of the bankruptcy court's judgment. The district court, however, denied interest on the fraud penalties from the date of assessment, notice and demand. On a motion for reconsideration of its order, the government moved to have the district court modify its order so that the interest on the fraud penalty would begin to run as of the date of assessment, notice and demand. This motion was denied by the district court's order of January 25, 1987. Both parties now appeal aspects of the district court's orders of October 16, 1986 and January 25, 1987.

## II.

We turn first to Resyn's appeal. The government's deficiency assessment

---

1. The district court also affirmed the bankruptcy court's conclusions of law with two exceptions: first, it found that the fraud penalty awarded by the bankruptcy court for 1969 had been improperly computed on Resyn's total tax liability rather than on the amount of the underpayment of taxes in 1969; and second, the district court remanded on the issue of whether Resyn was entitled to a bad debt reduction. This latter issue was ultimately settled prior to being tried in the bankruptcy court.

ordinarily is afforded a presumption of correctness, thus placing the burden of producing evidence to rebut that presumption squarely on the taxpayer. *Helvering v. Taylor*, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); *Anastasato v. Commissioner*, 794 F.2d 884, 886 (3d Cir.1986). Resyn first argues that the method of computation adopted by the I.R.S. in determining Resyn's tax deficiencies was arbitrary and clearly erroneous. The burden of proving that an assessment is arbitrary and excessive rests on the taxpayer; if the taxpayer cannot prove that the assessment was arbitrary, it retains the burden of overcoming the presumption in favor of the government that the assessment was not erroneous. *Demkowitcz v. Commissioner*, 551 F.2d 929 (3d Cir.1977); *Gerardo v. C.I.R.*, 552 F.2d 549, 552–53 (3d Cir.1977).

■ However, once the taxpayer has sustained its burden of proving that the assessment is arbitrary and excessive, i.e., that it lacks a rational foundation in fact and is based upon unsupported assertions, the ultimate burden of proving that the assessment is indeed correct is placed on the government. *Baird v. Commissioner*, 438 F.2d 490, 492 (3d Cir.1971). Thus in this case Resyn, claiming that the assessment was arbitrary and excessive, argues that it is the government that bears the burden of proving that its assessment was correct.

### A. Was the Assessment Arbitrary?

■ Resyn contends that the deficiencies assessed in this case were arbitrary and excessive because the I.R.S. agent who computed the deficiency utilized the wrong computational method. Thus, Resyn maintains that no presumption arises in favor of the Commissioner. The government responds by arguing that Resyn failed to make any showing that the assessment was arbitrary and excessive and that, therefore, the burden was properly placed on Resyn to prove that the assessment was inaccurate. We agree.

Resyn did not dispute that it was involved in a scheme to create an impression of lower revenue earning during the years 1963 through 1969. *See* App. at 731. Moreover, the checks that were deposited in Chemical Trader's account and the Resyn checks that were deposited in the Polymer account provide a means of calculating the amount of money illegally diverted from Resyn's gross income. The government thus contends that the burden was properly placed on Resyn to prove that the assessment was inaccurate and that Resyn failed to meet its burden, which could only be met by Resyn demonstrating the correct amount of tax actually owed.

The district court found that Resyn had failed to show that the government's assessment was arbitrary and excessive. In so finding, the district court relied heavily on the fact that Levitt, who was the only person in a position to disclose the true nature and purpose of the various intercompany transactions, did not testify. On the basis of our review of the evidence, this finding is not clearly erroneous.

### B. Has Resyn Met Its Burden of Showing that the Deficiency was Erroneous?

■ Given Resyn's failure to demonstrate that the government's assessment was arbitrary, Resyn retains the burden of demonstrating that the deficiency was incorrect. In order to have made such a showing in the district court, Resyn would have had to produce "credible and relevant evidence sufficient to establish that the determination was erroneous." *Anastasato*, 794 F.2d at 887. Resyn did not do so. In particular, Resyn, in order to sustain its contention, sought to prove that: (a) the method used to compute the deficiency was flawed because it did not account for certain "redeposits" from the Chemical Traders' account into Resyn's account; (b) the accounting was not conducted on an accrual basis; (c) the government failed to credit Resyn's account for reversed entries made on Resyn's books; and (d) the government erred by treating unidentified deposits in the Chemical Traders account as additional income to Resyn.

Not only did Resyn fail to carry its burden in these respects, but the record is

replete with evidence supporting the basis for the government's assessments. The government properly points out that Resyn had failed to prove that the so-called "redeposits" were ever treated as income by Resyn. As earlier noted, Levitt, who might have supplied testimony explaining the transactions, never testified. Further, the claim that "reverse entries" were not credited to Resyn's account fails for want of Resyn's proof. Similarly, the claim that Resyn's income was inflated by "unidentified deposits" was refuted by the checks and receipts produced by the government showing that Chemical Traders, one of the fictitious corporations, billed Resyn's customers for goods that Resyn sold, while Polymer Chemicals, the other fictitious company, inflated Resyn's cost of goods sold by billing Resyn through false invoices.

The record also discloses that wherever it was possible, Resyn's cost of goods sold was adjusted on an accrual basis by the government. In this connection, it cannot be overlooked that the unavailability of Resyn's books and records contributed to the difficulty experienced by the government in determining the year in which the expense or income occurred. Moreover, as the bankruptcy court found, and as the district court affirmed, the evidence was overwhelming that Resyn had employed a fraudulent scheme involving the use of Chemical Traders and Polymer Chemical's bank accounts in order to understate its income.

■ "As an appellate court twice removed from the primary tribunal, we review both the factual and the legal determinations of the district court for error." *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981). Our vantage point is identical to that of the district court with respect to reviewing the factual findings of the bankruptcy court, "so we review the bankruptcy court's findings by the standards the district court should employ, to determine whether the district court erred in its review." *Id.* at 102. Thus, in reviewing the district court's review of the bankruptcy court's factual

findings, we, like the district court, employ the "clearly erroneous" standard. *See Main Line Federal Savings & Loan Ass'n v. Tri–Kell*, 721 F.2d 904, 907 (3d Cir.1983); *see also In re: Meyertech Corp.*, 831 F.2d 410, 415 (3d Cir.1987). "To the extent the parties challenge the choice, interpretation, or application of legal precepts, we always employ the fullest scope of review," *Universal Minerals, Inc.*, 669 F.2d at 102, and the district court's legal determinations receive no presumption of correctness. *Id.*

Under this standard of review, our independent evaluation of the record reveals that the district court correctly upheld the bankruptcy court's factual findings and conclusions of law with respect to the correctness of the government's assessment, and correctly determined that Resyn had failed to carry its burden of proving that the government's deficiency assessment was erroneous.

### III.

■ Resyn also claims that the bankruptcy court erred in finding that it had fraudulently understated its income for the taxable years 1963 through 1969 and thus improperly imposed penalties pursuant to 26 U.S.C.A. § 6653(b) (West 1967 & Supp. 1988). We decline to entertain this aspect of Resyn's appeal because the issue was not raised in the district court, *see* App. at 730, and thus is not properly before us. *See Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

Moreover, even if the issue had been properly preserved, Resyn would have had great difficulty in convincing us that no fraud had been perpetrated in light of the record developed in the bankruptcy court.

### IV.

#### A.

■ In its cross-appeal, the government argues that the district court erred in holding that the government was not entitled to post-petition interest on the fraud penal-

ties. The government claims that interest on post-petition fraud penalties must be imposed from the date of assessment, notice and demand. The government relies on 26 U.S.C.A. § 6601 (West 1967 & Supp. 1988), which reads in relevant part, as follows:

\* \* \* \* \* \*

(2) Interest on penalties, additional amounts, or additions to tax.—

(A) In general. Interest shall be imposed under subsection (a) in respect of any assessable penalty, additional amount, or addition to the tax ... only if such assessable penalty, additional amount, or addition to tax is not paid within 10 days from the date of notice and demand therefor, and in such case *interest shall be imposed only for the period from the date of the notice and demand to the date of payment.*

26 U.S.C.A. § 6601(e)(2)(A) (emphasis added).[2] Affidavits filed by the I.R.S. disclose that fraud penalties for the years 1963–1969 were assessed against Resyn on the following dates: November 12, 1971, April 10, 1972, June 19, 1972, and February 28, 1973. *See* App. at 752, 761–62. The government sought $420,546 in post-petition interest on the fraud penalties from the dates of assessment.

Resyn, on the other hand, argues that interest on the fraud penalties could only be charged from the date on which the bankruptcy court entered its judgment of fraud. In the present case, that date was December 9, 1981.

The relevant statutes which frame this controversy are 26 U.S.C.A. § 6871(a) (West 1967) (referring to assessments when the taxpayer *is a bankrupt*, such as Resyn in the present case)[3] and 26 U.S.C.A. § 6213 (West 1980 & Supp.1988) (referring to assessments when the taxpayer *is not a bankrupt*). We reproduce the text of these statutes and discuss their interaction in Part B of this opinion, *infra* at 666–669.

The district court, in endeavoring to explain the relationship between § 6871(a) and § 6213, sought to clarify the parties' positions in the following manner:

The instant dispute arises out of the fact that this provision [6871(a) ] is somewhat ambiguous on the question of whether a bankrupt's liability for interest on penalties, like that of a non-bankrupt, is postponed until after a judicial determination of his liability for the deficiency, or whether it begins to run from the date of notice and demand. The United States argues that the Code, in order to protect the United States' interest in gaining immediate assurance that the tax liabilities of a bankrupt will be satisfied, not only does away with the Tax Court appeal procedure but also permits the IRS to make an immediate assessment of the unpaid tax and penalties and to hold the taxpayer liable for interest on the penalties from the date of such assessment. Resyn, on the other hand, claims that although the Code may preclude a Tax Court adjudication, it does permit a judicial determination of

---

**2.** In its discussion of § 6601, the government notes that amendments to that section have made no substantive changes that would affect the result we reach here. Footnote 23 of the government's brief recites that:

Although Section 6601 has been amended a number of times during the period from the time of taxable years involved here to the date of the Bankruptcy Court's opinion (including redesignation of the subsection in which the relevant provision is located), the terms specifying the date on which interest begins to run, have remained the same. See Pub.L. No. 93–625, Act of Jan. 3, 1975, 88 Stat. 2108, Sec. 7(b)(1) (redesignating Sec. 6601(f) as Sec. 6601(e)); Pub.L. No. 97–248, Act of Sept. 3, 1982, 96 Stat. 324, Sec. 344(b)(1) (striking out

subsection (2) and redesignating subsections (3) and (4) as (2) and (3), respectively); Pub. L. No. 98–369, Act of July 18, 1984, 98 Stat. 494, Sec. 158(a) (adding the language "other than additions to tax imposed under sections 6651(a)(1), 6659, 6660, or 6661," and adding Sec. 6601(e)(2)(B) imposing interest on the foregoing additions to tax from the date that a tax return is due to be filed, rather than from the date of notice and demand).

Appellee/Cross–Appellant's Brief at 38.

**3.** 26 U.S.C.A. § 6871(a) was amended in 1980 but retained essentially the same substantive provisions as its predecessor. 26 U.S.C.A. § 6871(b) was also amended but that section does not bear upon the issue here.

the deficiencies in the bankruptcy court. According to it, the bankruptcy court proceeding should be viewed as having the same function as the non-bankrupt taxpayer's Tax Court appeal, and thus the liability for interest on any penalties should be deferred just as it would during a Tax Court appeal.

App. at 825.

The district court, after undertaking a statutory analysis, held that the critical date of imposition of post-petition fraud penalties was the date on which the bankruptcy court entered its judgment of fraud, that is, December 9, 1981. The district court predicated its holding on the notion that Congress could not have intended to put bankrupt taxpayers in a less favorable position than taxpayers who petition the Tax Court for a redetermination of deficiencies. Accordingly, the district court denied the government's claim. We reverse.

### B.

Within 90 days from the date of assessment, a non-bankrupt taxpayer may contest a tax deficiency assessment in the Tax Court. Insofar as the deficiency results from the addition of a fraud penalty, the taxpayer is only required to pay interest on the deficiency assessment from the date on which either the 90 day appeal period expires, or, if an appeal is filed within the permitted 90 days, from the date on which the Tax Court renders its decision. 26 U.S.C.A. § 6213 reads, in pertinent part, that:

(a) Time for filing petition and restriction on assessment.—Within 90 days, ... after the notice of deficiency ... is mailed ... the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise pro-

vided in section 6851, 6852 or section 6861, no assessment of a deficiency in respect of any tax imposed by subtitle A, or B, chapter 41, 42, 43, 44, or 45 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until notice has been mailed to the taxpayer, nor until the expiration of such 90–day period, ... nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final ...

26 U.S.C.A. § 6213.[4]

A bankrupt taxpayer, however, at the time relevant to this case, was subject to a different rule as set forth in 26 U.S.C.A. § 6871(a), which read:

(a) Immediate assessment.—Upon the adjudication of bankruptcy of any taxpayer in any liquidating proceeding, the filing or (where approval is required by the Bankruptcy Act) the approval of a petition of, or the approval of a petition against, any taxpayer in any other bankruptcy proceeding, or the appointment of a receiver for any taxpayer in any receivership proceeding before any court of the United States or of any State or Territory or of the District of Columbia, any deficiency (together with all interest, additional amounts, or additions to the tax provided by law) determined by the Secretary or his delegate in respect of a tax imposed by subtitle A or B upon such taxpayer shall, despite the restrictions imposed by section 6213(a) upon assessments, be immediately assessed if such deficiency has not theretofore been assessed in accordance with law.

Id. (emphasis added) (since amended).

It is clear from the plain meaning of § 6213 that, whereas a non-bankrupt tax-

4. In its opinion, the district court disclosed that both Resyn and the government read § 6213 as allowing a non-bankrupt taxpayer to avoid paying penalties, and interest on those penalties, until after a final adjudication by the Tax Court. See App. at 824. Indeed, the district court's opinion states that, "[t]he parties agree that, according to the accepted reading of [§ 6213], the 'last day prescribed for payment' of penalties is postponed not only until the actual date of the notice and demand, but also beyond that

to the point when the Tax Court renders a final disposition on the matter." App. at 827. Because interest on any tax imposed by the Code must be paid from the "last date prescribed for payment" under 26 U.S.C. § 6601(a), it follows that interest on fraud penalties assessed against a non-bankrupt taxpayer would not begin to accrue until after the 90 day waiting period had expired or, if the taxpayer filed a petition with the Tax Court, until the Tax Court had rendered a final decision.

payer who appealed his assessment had no obligation to pay interest attributable to a fraud penalty until the Tax Court's decision, a bankrupt taxpayer pursuant to § 6871(a) would have been liable for interest from the date of assessment, which could, but need not necessarily, coincide with the date of appointment of a receiver.

Resyn, however, argues that § 6871(a) does not deny the bankrupt debtor the substantive protection against immediate accrual of interest that is provided for non-bankrupts under § 6213, but only nullifies those provisions of § 6213 which prevent the government from taking steps to protect satisfaction of its claim, (such as a levy or judicial collection proceeding), until the outcome of the bankruptcy court's adjudication on the merits.

Under Resyn's construction, a construction which parses § 6871(a) and finds no support in available authority, a bankrupt could avoid paying interest as the result of its status as a bankrupt, despite the plain meaning and intent of § 6871(a) and § 6601(e)(2)(A). Those statutes, when read together, provide that a bankrupt taxpayer may be assessed immediately on the appointment of a receiver and that the act of assessment is the triggering event for interest to be paid from the date of notice and demand. Indeed, even the district court recognized this circumstance when it stated that:

> For to adopt Resyn's position requires the court to stray somewhat from the literal wording of section 6871, and to afford the bankrupt taxpayer some of the substantive benefits provided for by section 6213 even though section 6871 tends to suggest that section 6213 simply does not apply to bankrupts.

App. at 829.

Although the authority is sparse, the one opinion involving the relationship between these two statutes is the decision of this court in *Cohen v. Gross*, 316 F.2d 521 (3d Cir.1963), involving an assessment made after the taxpayer was discharged as a bankrupt. Cohen sought to enjoin the assessment. The district court denied Cohen equitable relief. That decision was affirmed by this court. While the issue in *Cohen* obviously differs from the issue here, nevertheless the analysis of the *Cohen* court presages the analysis we have employed here. Judge Hastie, writing for the court in *Cohen*, stated:

> We view the provisions of section 6871, not as a mere brief suspension of the requirements of section 6213, but rather as a completely superseding procedure for the determination and collection of tax claims that are asserted in bankruptcy.... We think this indicates that section 6213 is simply inapplicable to a claim subject to and administered under the bankruptcy provisions of section 6871. The taxpayer himself recognizes this to the extent of conceding that by seeking relief in bankruptcy he subjected himself to the immediate assessment of any tax deficiency and the adjudication of his tax liability by the bankruptcy court, instead of the procedure prescribed by section 6213.

*Id.* at 522–23.

In its brief, the government, in urging the assessment date as the appropriate date for interest to accrue where the taxpayer is a bankrupt, calls our attention to the policy underlying the result we reach here:

> In rendering certain liabilities nondischargeable, Congress made its choice of policy. Of course, it is a familiar principle that one of the main purposes of the Bankruptcy Act is "to let the honest debtor begin his financial life anew." *Bruning v. United States*, 376 U.S. 358, 361 [84 S.Ct. 906, 908, 11 L.Ed.2d 772] (1964). But that is not the sole purpose of the bankruptcy laws. Congress has determined that certain problems, such as financing government, override the value of giving the debtor a wholly fresh start. *Ibid.; United States v. Sotelo, supra,* 436 U.S. [268] at 279 [98 S.Ct. 1795 at 1802, 56 L.Ed.2d 275 (1978)].

> The choice of policy is clear here. Congress enacted Section 6871 in order to protect the Government's interests in bankruptcy cases. See H.R.Rep. No. 73–704, 73rd Cong., 2d Sess. at 34 (1939–1

Cum.Bull, 554, 580), discussing the predecessor of the provision under consideration here. The terms of the provision are clear, as the District Court acknowledged. Immediate assessment of taxes is authorized where the taxpayer resorts to bankruptcy. As this Court has indicated, when a taxpayer seeks relief under the bankruptcy laws, he subjects himself to the complete and distinct treatment of his tax liabilities under Section 6871. *Cohen v. Gross, supra*, 316 F.2d at 523.

Appellee/Cross–Appellant's Brief at 42–43.

Not only do these policy considerations weigh heavily with us, but the literal language of the statutes necessarily dictates a distinction between the bankrupt and non-bankrupt taxpayer. Indeed, unless we uphold the statutory scheme, as we have analyzed it, the effect of Resyn's argument would be to give more favorable treatment to a bankrupt taxpayer than to a non-bankrupt taxpayer, rather than to afford the parity for which Resyn argues. This disparate treatment in favor of the bankrupt, results from the fact that a non-bankrupt taxpayer under § 6213 has only 90 days within which to contest his tax liability in Tax Court. Under Resyn's theory, however, the bankrupt taxpayer would have no similar time restriction within which tax liabilities could be challenged.

The dissent calls our attention to two Fifth Circuit cases which, although they arose in a different context and did not involve post-petition interest on fraud penalties, indicate that the bankruptcy court provides a bankrupt taxpayer with the same protections with which the Tax Court provides a non-bankrupt taxpayer. *See Rutas Aereas Nacionales v. United States*, 373 F.2d 213 (5th Cir.1967) and *Abel v. Campbell*, 334 F.2d 339 (5th Cir.1964). This is so because a bankrupt taxpayer is permitted to litigate his differences with the I.R.S. in a bankruptcy court in exactly the same way that a non-bankrupt taxpayer would litigate his differences with the I.R.S. in the Tax Court.

We have no disagreement with that characterization and indeed that is precisely what has happened in this case, where the bankruptcy court tried the controversy between Resyn and the Government and decided the various amounts of the deficiencies owed by Resyn. That parallel characterization, however, adds little to the question presented by the Government's cross-appeal, as to when interest begins to accrue on post-petition fraud penalties. Our earlier discussion answers this question by reference to the interaction between § 6871(a) and § 6601(e)(2)(A), holding that the act of assessment that may take place immediately upon appointment of a receiver is the event which provides for interest to be paid from the date of notice and demand. In this connection, it should be observed that a non-bankrupt taxpayer would not, under § 6213, pay interest until the Tax Court's decision was rendered because until then no assessment would have been allowed. Conversely, a bankrupt taxpayer's assessment under § 6871(a) may coincide with the filing of a petition in bankruptcy, thus allowing for an earlier payment of interest. In this case, of course, the assessments occurred on various dates between 1971 and 1973, after Resyn had filed its bankruptcy petition.

Thus, we are satisfied that both the policy and the plain language and meaning of the relevant tax statutes require that post-petition interest on fraud penalties be imposed from the date of assessment, notice and demand. The district court erred in holding otherwise. We are, therefore, compelled to reverse so much of the district court's orders as denied the government's claim for post-petition interest on the fraud penalties. (*See* district court orders dated September 26, 1986 and December 31, 1986).[5]

---

5. We are not persuaded by Resyn's argument that imposing separate interest payment requirements on bankrupts and non-bankrupts violates the mandate of the Equal Protection Clause. Our holding in *Cohen v. Gross*, 316 F.2d 521 (3d Cir.1963), discussed in text *supra*, makes it clear that Congress intended to treat bankrupts and non-bankrupts differently. This "unequal treatment" is justified by the fact that if the government is not allowed to assess the bankrupt in accordance with the provisions of § 6871(a), there might be nothing left subse-

In reversing the district court, however, we are also obliged to remand to that court for a determination as to the date of the notice and demand prescribed by § 6601(e)(2)(A). Although the district court's opinion dated August 19, 1986 may be read as affirming the fact that notice and demand were in fact effected as to Resyn, *see* App. at 824, at oral argument, a substantial question surfaced as to the issuance of such notice and demand. The government agreed that a remand to the district court was indicated in order to clarify the issue as to whether, and when, notice and demand were given.

### V.

We will affirm the district court's orders allowing the income tax deficiencies, pre- and post-petition interest on those deficiencies, and pre-petition fraud penalties (87–5162).

However, we will reverse so much of the district court's orders as denied the government's claim for post-petition interest on the fraud penalties (87–5134) and will remand to the district court for proceedings consistent with this opinion.

HUTCHINSON, Circuit Judge, dissenting.

I am in agreement with the court's analysis and disposition of the issues raised in Resyn's appeal (at No. 87–5134) and, therefore, join parts I through III of the court's opinion.

I must, however, respectfully dissent from part IV of the court's opinion dealing with the government's cross-appeal (at No. 87–5162). In that section of its opinion, the court holds that interest on a fraud penalty begins to accrue, in a bankruptcy case, no later than the date on which an Internal Revenue Service district director issues a notice and demand for payment. Because the date on which that notice and demand was issued in this specific case does not appear on the record, the court here remands the case to the district court for that determination. I believe the district court correctly held that interest on fraud penalties assessed against a bankrupt taxpayer pursuant to the immediate assessment provisions of the former version of § 6871(a) does not accrue until the bankruptcy court adjudicates the validity of that particular penalty.

The government's own regulation provides that notice and demand, in a bankruptcy case, should issue contemporaneously with the filing of the government's proof of claim for taxes the bankrupt owes.[1] 26 C.F.R. § 301.6871(b) (1987). If that regulation was followed in this case, then, under the court's holding, interest on the fraud penalties began to accrue on the date the government filed its claim, not on the date the bankruptcy court allowed the claim. This does not square with the sections of the Bankruptcy Act and the Internal Revenue Code in force when this taxpayer filed its Chapter XI petition on September 3, 1970.

To understand why this is so, some additional analysis and definition are needed. Interest on "deficiencies" generally accrues as of the date the tax is due, by virtue of the general rule set forth in 26 U.S.C.A. § 6601(a). However, as the court correctly notes, interest on fraud penalties "shall be imposed only for the period from the date of the notice and demand to the date of payment." 26 U.S.C.A. § 6601(e)(2)(A).

---

quent to the bankruptcy proceedings from which to pay interest on fraud penalties arising from a tax deficiency assessment. Under a "rational basis" analysis, we are satisfied that this justification is sufficient to withstand an equal protection challenge.

1. Generally, claims for pre-petition fraud penalties and post-petition interest can be allowed only if the bankruptcy court finds that the debtor has been rehabilitated. Such penalties and interest are assessed against the debtor personally, rather than against the bankruptcy estate, and are satisfied from assets that are after-acquired properties of the debtor. *See In re Becker's Motor Transp., Inc.,* 632 F.2d 242, 248 (3d Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1358, 67 L.Ed.2d 341 (1981); *Hugh H. Eby Co. v. United States,* 456 F.2d 923, 925 (3d Cir.1972). In this case, the government entered into a stipulation for the creation of a fund which would satisfy tax penalties and interest. App. at 4–7.

The initial step in the determination of an income tax liability over and above the amount the taxpayer returns is the government's determination of a "deficiency." 26 U.S.C.A. § 6211 (West Supp.1988). This is done administratively. The government then is required to give the taxpayer a statutory "notice of deficiency," if the taxpayer is not under the protection of a bankruptcy court or has not waived his rights. 26 U.S.C.A. § 6212 (West Supp.1988). An "assessment of tax" cannot be made until ninety days after this notice of deficiency is mailed to the taxpayer; the assessment can be further delayed by the taxpayer's filing of a petition with the Tax Court within that ninety days, in which case assessment cannot be made until the Tax Court has decided the amount of tax due and its decision has become final. 26 U.S.C.A. § 6213. The parties and the court are in agreement that a non-bankrupt taxpayer who files a petition with the Tax Court is not liable for interest on fraud penalties under § 6601(e)(2)(A) until the decision of the Tax Court becomes final.

However, when the taxpayer comes under protection of a bankruptcy court before the § 6213(a) statutory notice is given, § 6871 of Title 26 applies instead of § 6213(a). In its applicable form at the times relevant to this case, § 6871 allowed immediate "assessment" without the non-bankruptcy prerequisite of a § 6213 notice of deficiency. The text of the version of § 6871 applicable to this case provided:

(a) **Immediate assessment.**—Upon the adjudication of bankruptcy of any taxpayer in any liquidating proceeding, the filing or (where approval is required by the Bankruptcy Act) the approval of a petition of, or the approval of a petition against, any taxpayer in any other bank- ruptcy proceeding, or the appointment of a receiver for any taxpayer in any receivership proceeding before any court of the United States or of any State or Territory or of the District of Columbia, any deficiency (together with all interest, additional amounts, or additions to the tax provided by law) determined by the Secretary or his delegate in respect of a tax imposed by subtitle A or B upon such taxpayer shall, despite the restrictions imposed by section 6213(a) upon assessments, be immediately assessed if such deficiency has not theretofore been assessed in accordance with law.

(b) **Claim filed despite pendency of Tax Court proceedings.**—In the case of a tax imposed by subtitle A or B claims for the deficiency and such interest, additional amounts, and additions to the tax may be presented, for adjudication in accordance with law, to the court before which the bankruptcy or receivership proceeding is pending, despite the pendency of proceedings for the redetermination of the deficiency in pursuance of a petition to the Tax Court; but no petition for any such redetermination shall be filed with the Tax Court after the adjudication of bankruptcy, the filing or (where approval is required by the Bankruptcy Act) the approval of a petition of, or the approval of a petition against, any taxpayer in any other bankruptcy proceeding, or the appointment of the receiver.

26 U.S.C.A. § 6871 (since amended).[2]

The court assumes that interest under § 6601(e)(2)(A) begins to accrue on the bankruptcy court's adjudication of a person as a bankrupt or a debtor. In doing so, the court fails to take adequately into account all the statutory prerequisites to both collection of tax and, in the case of fraud

---

**2.** Section 6871, as amended in 1980, distinguishes between receiverships and Chapter XI proceedings. With respect to the latter, it now reads:

(b) **Immediate assessment with respect to certain title 11 cases.**—Any deficiency (together with all interest, additional amounts, and additions to the tax provided by law) determined by the Secretary in respect of a tax imposed by subtitle A or B or by chapter 41, 42, 43, 44, or 45 on—

(1) the debtor's estate in a case under title 11 of the United States Code, or
(2) the debtor, but only if liability for such tax has become res judicata pursuant to a determination in a case under title 11 of the United States Code,

may, despite the restrictions imposed by section 6213(a) on assessments, be immediately assessed if such deficiency has not theretofore been assessed in accordance with law.

26 U.S.C.A. § 6871 (West Supp.1988).

penalties, accrual of interest. The making of an assessment, whether in a bankruptcy or non-bankruptcy context, does not of itself permit the government to collect the tax. Collection generally may only begin upon "notice and demand" for payment. 26 U.S.C.A. § 6303 (West 1967). The government recognizes by its own regulation that notice and demand is required in a bankruptcy situation and provides that it shall be given, not when the person whose estate is being administered is adjudicated a bankrupt or a debtor, but only when the government files a proof of claim. *See* 26 C.F.R. § 301.6871(b). By statute, interest on fraud penalties is not imposed unless the taxpayer fails to pay the penalty "within 10 days from the date of notice and demand therefor." 26 U.S.C.A. § 6601(e)(2)(A). If the taxpayer fails to timely pay the fraud penalty, interest on it accrues only from the date of the "notice and demand." *Id.* Accordingly, the question on this cross-appeal, properly stated, is not whether interest on the fraud penalties begins to accrue on the date of assessment (that is, the date the petition for adjudication as a bankrupt or debtor is filed), but whether it accrues from the issuance of the notice and demand (by regulation, to issue contemporaneously with the filing of a proof of claim, *see* 26 C.F.R. § 301.6871(b)), regardless of whether the taxpayer contests the penalties in the bankruptcy proceeding.

If the court is placing the accrual date upon either assessment or the presentation of the notice and demand, it is necessarily starting the accrual of interest no later than the filing of a proof of claim in bankruptcy. This seems inconsistent with the applicable section of the Bankruptcy Act in effect when Resyn filed its Chapter XI petition, namely, § 2 a(2A). Section 2 a of the Bankruptcy Act, as amended in 1966, empowered the bankruptcy court to:

> (2A) Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, and in respect to any tax, whether or not paid, when any such question has been contested and adjudicated by a judicial or administrative tribunal of competent jurisdiction and the time for appeal or review has not expired, to authorize the receiver or the trustee to prosecute such appeal or review[.]

Pub.L. No. 89–496, 80 Stat. 270 (1966), *reprinted in* 1966 U.S.Code Cong. & Ad. News 306 (since repealed). This court concluded that § 2 a(2A) vested bankruptcy courts with jurisdiction to determine the validity of tax penalties and interest. *In re: Becker's Motor Transp., Inc.,* 632 F.2d 242, 245 (3d Cir.1980).[3]

Even if we were to assume that the Internal Revenue Service is a competent administrative tribunal within the meaning of the Bankruptcy Act, and that the government's assessment under § 6871(a) constitutes an adjudication by a competent tribunal, that "adjudication" does not occur before the commencement of the case, but at best contemporaneously with it. Consequently, I believe that the bankruptcy

---

**3.** 11 U.S.C.A. § 505(a) was derived, with only stylistic changes, from section 2a (2A) of the old Bankruptcy Act. *See* Historical and Revision Notes, 11 U.S.C.A. § 505 (West 1979 & Supp. 1988). Subsection (a) now reads:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

11 U.S.C.A. § 505(a) (West 1979 & Supp.1988).

court has jurisdiction to determine the correct amount of tax, additions to tax, interest and penalties due from this taxpayer, that the taxpayer is entitled to such a determination and that, therefore, interest on the fraud penalty can only begin to accrue under § 6601(e)(2)(A) from the date that the bankruptcy court allows the claim, or otherwise adjudicates the validity of the fraud penalty.

While the court correctly observes that there is no case authority precisely on point, two other courts of appeals have concluded that former § 6871 entitles a taxpayer (whether a bankrupt under Chapter VII or a debtor under Chapter XI) to a review of tax deficiencies in the bankruptcy court similar to the review afforded in the Tax Court under § 6213. *See Rutas Aereas Nacionales, S.A. v. United States*, 373 F.2d 213 (5th Cir.1967) (stating that provisions of the Internal Revenue Code regarding the filing of a claim for income taxes in a bankruptcy proceeding provide for the taxpayer a substitute tribunal which, if he acts during the pendency of the proceedings, gives him the same protection with respect to an adjudication as that afforded taxpayers who file a petition in the Tax Court) (citing *Abel v. Campbell*, 334 F.2d 339 (5th Cir.1964)); *Jamy Corp. v. Riddell*, 337 F.2d 11 (9th Cir.1964) (holding that a taxpayer in a bankruptcy receivership situation has the right to an adjudication of tax claim in the bankruptcy or receivership court and stating that such review is not under circumstances less favorable than in the tax court), *cert. denied*, 380 U.S. 953, 85 S.Ct. 1085, 13 L.Ed.2d 970 (1965).[4]

I believe that the provision in former § 6871 for immediate assessment "despite the restrictions imposed by section 6213(a) upon assessments" was designed to protect the government's interest in property of the bankrupt or debtor's estate by permitting it to assert a claim with lien status as to after-acquired property instead of a mere unsecured claim. *See United States v. Fidelity Philadelphia Trust Co.*, 459 F.2d 771, 773 (3d Cir.1972) (federal tax lien arises at time of assessment). Without this end run around § 6213, the Commissioner would be helpless to obtain a lien by assessing a deficiency against a taxpayer under the protection of a bankruptcy court not only during the ninety day waiting period but thereafter during the pendency of a Tax Court proceeding. This would give a debtor who successfully emerges from reorganization, or its lien creditors, an advantage over the government unavailable to others with respect to after-acquired property.

Congress's establishment of a separate procedure for assessment[5] in bankruptcy cases to insure the government's lien status, despite the restrictions on assessment contained in § 6213, does not show that it intended to deprive a bankrupt taxpayer of the benefit of deferring accrual of interest on fraud penalties until the fact of fraud has been adjudicated. This court has read § 2 a(2A) of the old Bankruptcy Act as vesting the bankruptcy courts with jurisdiction to resolve the validity of tax penalties and interest. *In re: Becker's Motor Transp., Inc.*, 632 F.2d at 245. Nothing in § 6871 indicates that a taxpayer who contests the government's assessment during the pendency of his bankruptcy proceedings is not entitled to protection from the immediate accrual of interest that would flow from such an adjudication. Because Resyn contested the government's assessment during the pendency of this bankruptcy proceeding, I believe interest on the assessed fraud penalty should run from the date that determination is considered final, that is, 30 days after December 9, 1981, the date upon which the bankruptcy court ren-

---

4. In *Rutas Aereas Nacionales, Abel, Jamy Corp.,* and *Cohen v. Gross*, 316 F.2d 521 (3d Cir.1963), the courts held that a taxpayer against whom the government had assessed tax deficiencies under section 6871 during the pendency of bankruptcy or receivership proceedings could not enjoin the government pursuant to section 6213(a) from collecting the assessed taxes once those proceedings had terminated. In each case, the court held that the bankruptcy or receivership court became the sole forum for adjudicating tax liability.

5. I note, again, that accrual of interest follows from the taxpayer's failure to pay the penalty upon notice and demand, and not from the government's act of assessment.

dered its decision. *See* 26 C.F.R. § 301.7481–1 (1987).

Accordingly, I dissent and would affirm the order of the district court in its entirety.