762 F.2d 1008
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
IN RE JORGES CARPET MILLS, INC., DEBTOR.
C. KENNETH STILL, TRUSTEE,
v.
NORTH GEORGIA ELECTRIC MEMBERSHIP CORPORATION, DEFENDANT-APPELLANT.
 NO. 84-5611
 United States Court of Appeals, Sixth Circuit.
 4/23/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 BEFORE: LIVELY, Chief Judge, JONES, Circuit Judge, and WEICK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellant North Georgia Electric Membership Corporation (NGEMC) seeks reversal of a bankruptcy court order voiding a transfer from Jorges Carpet Mills, Inc. (Jorges) to NGEMC. The bankruptcy court found that 11 U.S.C. Secs. 548, 550 entitle Jorges' Trustee in Bankruptcy to recover $9,577.46 which was transferred and $60.00 in costs from NGEMC. The district court affirmed. Because we find that the bankruptcy court's findings of fact are not clearly erroneous, we affirm.
 
 
 2
 Jorges and Pro Carpet, Inc. (Pro Carpet) each received electrical service from NGEMC; each company was billed through its own account. On October 28, 1980, a check was issued from a Jorges' account in the amount of $6,084.62. The check was payable to NGEMC for electrical services furnished to Pro Carpet. On November 26, 1980, a second check from Jorges to NGEMC paid for $3,492.84 in electrical services received by Pro Carpet. Jorges was hopelessly insolvent at the times these two transfers to NGEMC were made. Jorges received no benefit from its payment of Pro Carpet's electrical services.
 
 
 3
 On December 19, 1980, an involuntary bankruptcy petition was filed against Jorges. C. Kenneth Still was appointed Trustee on January 28, 1981. On January 26, 1983, Still, as Trustee, filed a complaint against NGEMC seeking to avoid the two transfers from Jorges to NGEMC on behalf of Pro Carpet. After a trial on June 21, 1983, the bankruptcy court made findings of fact, which we have substantially paraphrased above, and ruled that the transfers were voidable under 11 U.S.C. Secs. 548 and 550.
 
 
 4
 On appeal, the district court reviewed the bankruptcy court's findings and the trial transcript and affirmed. The district court found that the transcript revealed testimony of the Trustee's accountant that he had discovered the October 28, 1980 check, drawn on a Jorges account, while examining Jorges' bank statements. The accountant also testified that the account on which the November 26, 1980 check was drawn was the account which received Jorges' factor funds from Aetna, and which was used to pay Jorges bills.
 
 
 5
 The district court provides appellate review in bankruptcy cases; the bankruptcy court itself sits as factfinder; therefore, the district court's evaluation of the evidence is not shielded by the clearly erroneous standard, but rather is subject to plenary review along with its legal rulings. See Universal Minerals Inc. v. C.A. Hughs & Co. 669 F.2d 98, 101-02 (3d Cir. 1981). This Court reviews the bankruptcy court by the standard the district court should employ. Id. We will reverse the bankruptcy court's findings of fact only if they are clearly erroneous. Bankruptcy Rule 8013; In Re R. S. Grist Co., 16 B.R. 872, 873 (S.D. Fla. 1982). There must be cogent reasons appearing on the record before this Court will reject such factfinding. In Re Wingfield, 15 B.R. 647, 649 (W.D. Okl. 1981).
 
 
 6
 NGEMC brought this action under 11 U.S.C. Secs. 548, 550, which entitle a Trustee to recover funds transferred by a debtor during a period of insolvency if the debtor receives less than fair or equivalent consideration. Neither the bankruptcy court's nor the district court's interpretation of this law is in issue. There is no conflict concerning the fact of Jorges insolvency at the time the checks in question were written. Nor is there any question concerning the absence of benefit to Jorges in return for paying Pro Carpet's electricity bills. NGEMC alleges that the Trustee did not prove the element of his case which requires that the insolvent debtor own the transferred property.
 
 
 7
 In each instance, NGEMC provides no evidence that the bankruptcy court erred, but rather raises possibilities of alternative ownership of the funds, which are not supported by evidence in the record.
 
 
 8
 The following evidence in the record supports the bankruptcy court's finding that the October 28, 1980 check transferred funds belonging to Jorges. The check identified the owner of the account as 'Jorges Carpet Mills, Incorporated, Disbursing Agent.' It was signed by Jorges' corporate treasurer and bookkeeper and was found by the Trustee's accountant among Jorges' bank statements. NGEMC contends that the bankruptcy court was clearly erroneous to find that Jorges owned the funds in the checking account when there was no proof that Jorges was not managing someone else's money in the account by acting as disbursing agent. NGEMC offered no evidence that Jorges served as a disbursing agent for any other person or organization. In the absence of evidentiary conflict, Jorges did not have to negate every possibility of alternative ownership of the funds.
 
 
 9
 In Re Caudy Custom Builders, Inc., 31 B.R. 6 (Bankr. D.S.C. 1983), which NGEMC cites, supports this proposition. In Caudy a debtor held title to property, but also belonged to a partnership. Property purchased by a partner on behalf of the partnership became partnership property. As such, it would not belong in the bankruptcy estate of the individual partner who purchased the property. Faced with this evidentiary conflict, the court in Caudy required proof of the purpose for which the property was purchased to determine its ownership. In the present case, there is no other party with an apparent claim to the funds in the checking account.
 
 
 10
 With regard to ownership of the funds transferred by the November 26, 1980 check, the evidence supports the bankruptcy court's finding of ownership by Jorges. In November 1980, the Jorges accounts at the bank from which the October 28, 1980 check was drawn were closed and the account upon which the November 26, 1980 check was drawn was opened. Jorges had a factoring relationship with Aetna Business Credit whereby Aetna purchased Jorges' accounts receivable and advanced funds to Jorges. The wire transfer by which Aetna placed $27,000 in the account on which the November 28, 1980 check was drawn, on that very day, appeared on Aetna's computer printout as a factoring payment to Jorges. The accountant testified that, although the November 28, 1980 check was used to pay Pro Carpet's electricity bill, in general the account was used to pay Jorges' bills. He also testified that no other account he had found was receiving funds from Aetna or paying Jorges' bills. The accountant testified that he had thoroughly examined Jorges' books.
 
 
 11
 NGEMC simply asks this court to reweigh the evidence. The bankruptcy court's findings of fact are not clearly erroneous. Therefore, we AFFIRM.