

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-9-1998

# United States v. Varlack Ventures Inc

Precedential or Non-Precedential:

Docket 97-7489

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"United States v. Varlack Ventures Inc" (1998). *1998 Decisions.* Paper 154.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/154

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 9, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-7489

UNITED STATES OF AMERICA
        Appellant

v.

VARLACK VENTURES, INC;
HUBERT FREDERICKS

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 96-cr-00229)

Argued April 2, 1998

BEFORE: STAPLETON, COWEN and ALITO,
Circuit Judges

(Filed July 9, 1998)

        Howard P. Stewart, Esq. (Argued)
        Senior Litigation Counsel
        Stanley DeJongh, Esq.
        Environmental Crimes Section
        P.O. Box 23985
        Washington, D.C. 20026-3985

         Counsel for Appellant
        United States of America

　　　　Alan D. Smith, Esq. (Argued)
　　　　Hodge & Francois
　　　　1340 Taarnederg Road
　　　　Charlotte Amalie, St. Thomas
　　　　USVI, 00802

　　　　 Counsel for Appellee
　　　　Varlack Ventures, Inc.

　　　　Charles B. Herndon, Esq. (Argued)
　　　　Suite 115
　　　　3303 Louisiana
　　　　Houston, TX 77006

　　　　 Counsel for Appellee
　　　　Hubert Fredericks

OPINION OF THE COURT

COWEN, Circuit Judge.

The government appeals the August 19, 1997, order of the District Court for the District of the Virgin Islands suppressing evidence seized during a warrantless search of the M/V Venture Pride. We conclude that the search of the Venture Pride at issue in this appeal was authorized by 14 U.S.C. S 89(a) (1994) since the Venture Pride was situated in U.S. territorial waters while undergoing repair. Section 89(a) permits warrantless searches of vessels in U.S. territorial waters based solely upon a reasonable suspicion of criminal activity, and the government possessed the requisite reasonable suspicion that a search would produce further evidence that Venture Pride had violated U.S. environmental laws. We will reverse the order of the district court and remand for further proceedings.

I.

On March 26, 1995, the U.S. Coast Guard Marine Safety Detachment Office in St. Thomas received a telephone call reporting an oil spill in Red Hook harbor, to which the Coast Guard dispatched Lt. Keith Janssen. Janssen interviewed an employee of the marina, who pointed out a

sheen where the oil spill had occurred, and Janssen took a sample of the sheen.

Janssen subsequently spoke with a witness to the spill, who identified the Venture Pride as the offending vessel. The Venture Pride is owned by Varlack Ventures, Inc., and operates as a commercial ferry under a Coast Guard certificate of inspection. When the Venture Pride returned to Red Hook harbor, Janssen located the specific opening on the vessel through which the oil had flowed because a witness identified the location on a diagram of the vessel that Janssen sketched.

Janssen then boarded the Venture Pride without a warrant and asked for the captain, who was not on board. He instructed the crew to arrange for the captain's return. Janssen received permission from a member of the crew to inspect the engine room, where he noted oil in the bilge. He also observed a hose leading from the bilge to an overboard fitting as well as an illegally-wired bilge pump. Janssen took a sample of the oil in the bilge and, after disembarking, of the oil from the overboard discharge fitting.

Janssen then boarded the Venture Pride a second time and gave a federal letter of interest to the now-present captain, Hubert Fredericks, who was then on board. Fredericks gave Janssen a statement about the spill and acknowledged that he had not reported the spill in Red Hook harbor nor a possible spill in Cruz Bay, St. John. Janssen thereupon revoked the Venture Pride's certificate of inspection.

On March 27, 1995, Janssen spoke with Antonio Thomas, who supervised maintenance for Varlack Ventures. Thomas informed him that the Venture Pride was in the north branch of Cruz Bay. Janssen instructed Thomas not to repair the Venture Pride since Coast Guard officers planned to photograph her the following day. On March 28, 1995, Janssen and another Coast Guard officer boarded the Venture Pride without a warrant. They videotaped and photographed the interior and exterior of the ship. Janssen noticed that a large amount of oil had been removed from the bilge.

3

Fredericks and Varlack Ventures were indicted for knowingly discharging oil into U.S. waters in violation of 33 U.S.C. SS 1319(c)(2)(A), 1321(b)(3) (1994), failing to report an oil spill in violation of 33 U.S.C. S 1321(b)(5) (1994), and aiding and abetting such activities in violation of 18 U.S.C. S 2 (1994). Varlack Ventures also was indicted for violating 33 U.S.C. S 1319(c)(1) by negligently discharging oil into U.S. waters. Fredericks subsequently filed a motion to suppress his and the crew's statements to Janssen as well as evidence obtained during the two warrantless searches, March 26 and 28, 1995. Following an evidentiary hearing, the district court ruled that Fredericks's and the crew's statements, as well as the evidence obtained during the search on March 26, were admissible. The district court suppressed evidence obtained during the March 28 search. The government appeals from that portion of the district court order which suppresses evidence from the search on March 28. Varlack Ventures did not join the suppression motion in the district court and does not take any position in this appeal.

II.

Our jurisdiction over this appeal arises under 18 U.S.C. S 3731 (1994). We will exercise plenary review of the district court's legal determinations and applications of law to facts. We will review the district court's factualfindings for clear error. See Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 103 (3d Cir. 1981).

III.

Usually, our point of departure for a Fourth Amendment inquiry would be whether Fredericks has a reasonable expectation of privacy in the areas of his vessel searched by the Coast Guard; however, we have no need to decide this issue in the instant case. Even assuming Fredericks has standing, the Coast Guard officers had the requisite level of suspicion required for searching vessels in U.S. territorial waters, and no warrant was needed for the search.

A.

Determining whether a plaintiff has standing to challenge a search equates to determining whether the plaintiff has a reasonable expectation of privacy in the property searched. See Rakas v. Illinois, 439 U.S. 128, 143, 99 S. Ct. 421, 430 (1978).[1] Since Varlack Ventures rather than Fredericks owns the Venture Pride, Fredericks cannot base a reasonable expectation of privacy on a proprietary interest in the boat. Instead, Fredericks's reasonable expectation of privacy can only arise from his position as captain of the vessel.[2]

Third Circuit precedent is inconclusive regarding whether the captain of a ship can have a reasonable expectation of privacy in the public areas of his vessel such as the engine room,[3] and an analysis of explicit positions taken by our sister courts of appeals on this issue fails to reveal any consistent doctrine. In United States v. Lopez, 761 F.2d 632, 635 (11th Cir. 1985), the Eleventh Circuit noted that a captain does not have a reasonable expectation of privacy in the public areas of the vessel such as the engine room since the Coast Guard is authorized under section 89(a)[4] to

_____

1. The Fourth Amendment also requires that the individual manifest a subjective expectation of privacy in the property searched. See California v. Greenwood, 486 U.S. 35, 39, 108 S. Ct. 1625, 1628 (1988). Fredericks's assumption of command as captain and his exercise of authority over the crew manifests this subjective expectation.

2. On this appeal, we will assume that Fredericks could still assert the prerogatives and authority as captain of the Venture Pride even though he was not on board from the vessel during the search on March 28.

3. In United States v. Demanett, 629 F.2d 862 (3d Cir. 1980), we noted that "the government [made] no contention that any of the defendants arrested on board the vessel lack standing to claim that the search and seizure violated the fourth amendment [sic]." Id. at 866. In United States v. Wright–Barker, 784 F.2d 161 (3d Cir. 1986), the captain consented to the search of the vessel. See id. at 176.

4. Section 89(a) reads as follows:

   (a) The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States.

conduct administrative inspections of the public areas of vessels without a warrant and without any suspicion of wrongdoing. Lopez, 761 F.2d at 635; see United States v. Freeman, 660 F.2d 1030, 1034 (5th Cir. Unit B 1981).5 In contrast, the First Circuit in United States v. Cardona-Sandoval, 6 F.3d 15 (1st Cir. 1993), held that a captain does have a reasonable expectation of privacy in the public areas of the ship such as the engine room. As the First Circuit stated, "This interest derives from [the captain's] custodial responsibility for the ship, his associated legal power to exclude interlopers from unauthorized entry to particular places on board, and the doctrines of admiralty, which grant the captain (as well as the owner) a legal identity of interest with the vessel." Id. at 21. In contrast to this dispute, courts of appeals agree that captains and crew-members have a reasonable expectation of privacy in

_____

For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance. When from such inquiries, examination, inspection, or search it appears that a breach of the laws of the United States rendering a person liable to arrest is being, or has been committed, by any person, such person shall be arrested or, if escaping to shore, shall be immediately pursued and arrested on shore, or other lawful and appropriate action shall be taken; or, if it shall appear that a breach of the laws of the United States has been committed so as to render such vessel, or the merchandise, or any part thereof, on board of, or brought into the United States by, such vessel, liable to forfeiture, or so as to render such vessel liable to a fine or penalty and if necessary to secure such fine or penalty, such vessel or such merchandise, or both, shall be seized.

14 U.S.C. S 89(a).

5. The Fourth Circuit has expressed in dicta its agreement with the conclusion articulated in Lopez. See United States v. Manbeck, 744 F.2d 360, 384 n.37 (4th Cir. 1984) (stating its agreement with Freeman (which reiterated the Lopez doctrine) but noting that the issue of the captain's reasonable expectation of privacy was not raised at the appellate level and, given the existence of probable cause, was not considered necessary for the decision reached).

the non-public areas of the ship such as personal lockers. See id. at 21-22; Lopez, 761 F.2d at 635; United States v. DeWeese, 632 F.2d 1267, 1270-71 (5th Cir. 1980).

However, as our analysis infra explicates, we have no need to decide whether Fredericks enjoyed a reasonable expectation of privacy in the public areas of his vessel since, even if he did, the Coast Guard officers fulfilled the requirements for conducting a warrantless search of his vessel.

B.

Before examining the justification for the Coast Guard's search, we must first ascertain the Venture Pride's location since the standard might differ depending upon whether the ship was on land or in the water. The district court found that the Venture Pride was in drydock at the time of the March 28 search. However, the government claims that the ship was actually in the water, and the government cites Janssen's testimony that the ship "was in the north branch of Cruz bay, also referred to as the Creek." App. at 77. Fredericks does not point to any countervailing testimony that supports the district court's conclusion that the Venture Pride was in drydock. The testimony before the district court was uncontested that, although the vessel may have been undergoing repairs, it was not in drydock but in the water. The district court's factual finding was clearly erroneous since "we are left with a definite and firm conviction that a mistake has been committed." United States v. Roy, 869 F.2d 1427, 1429 (11th Cir. 1989). We find that the Venture Pride was not in drydock but rather in the water during the search on March 28.

C.

We have previously joined our sister courts of appeals in interpreting section 89(a) to allow searches of vessels for criminal activities based upon reasonable suspicion of criminal activity. See Wright-Barker, 784 F.2d at 176. Since the Venture Pride was in the water while undergoing repair, it is covered by section 89(a), which authorizes searches "upon the high seas and waters over which the United

7

States has jurisdiction[.]" 14 U.S.C. S 89(a). Therefore, the Coast Guard only needed reasonable suspicion of criminal activity in order to search the Venture Pride. See Wright–Barker, 784 F.2d at 176.

The Coast Guard undoubtedly possessed reasonable suspicion of criminal activity in this case. We have not previously defined reasonable suspicion for the purposes of section 89(a), but the Eleventh Circuit defines reasonable suspicion in the section 89(a) context as follows:

> Although we examine the totality of the circumstances to determine reasonable suspicion, reasonable suspicion must be more than a mere generalized suspicion or hunch. United States v. Pearson, 791 F.2d 867, 870 (11th Cir.), cert. denied, 479 U.S. 991, 107 S. Ct. 590, 93 L. Ed.2d 591 (1986); United States v. Reeh, 780 F.2d 1541, 1544 (11th Cir. 1986). Reasonable suspicion must be based on specific articulable facts, together with rational inferences drawn from those facts, which reasonably warrant suspicion of criminal activity. United States v. Brignoni–Ponce, 422 U.S. 873, 884, 95 S. Ct. 2574, 2581, 45 L. Ed.2d 607 (1975). Law enforcement officers may subjectively assess those facts in light of their expertise.

Roy, 869 F.2d at 1430. On March 26, a witness identified the Venture Pride as the source of the oil spill. Later that day, Janssen conducted his first search of the Venture Pride and found oil in the bilge, a hose leading from the bilge to an overboard fitting, and a bilge pump wired illegally. Finally, Fredericks gave a statement about the spill and admitted that he had not reported the spill in Red Hook harbor nor a possible spill in Cruz Bay, St. John. Accordingly, the Coast Guard possessed reasonable suspicion that it would find further evidence of criminal activity, meaning that the search was justified under section 89(a).

Concerning the applicability of the Fourth Amendment's warrant requirement, section 89(a) contains no provision requiring a warrant, nor have any courts of appeals required a warrant for searches based upon a reasonable suspicion of criminal activity that are conducted pursuant

8

to section 89(a). See, e.g., Williams, 617 F.2d at 1074. Indeed, no warrant would be required even if the search had taken place outside the context of section 89(a). The mobility of the Venture Pride gave it access to the open seas even though undergoing repair. This possibility of flight created an exigent circumstance to justify a warrantless search under the Fourth Amendment. See Carroll v. United States, 267 U.S. 132, 153, 45 S. Ct. 280, 285 (1925) ("practically since the beginning of the government," no warrant has been required for searches of ships "because the [ship] can be quickly moved out of the locality or jurisdiction in which the warrant must be sought"); United States v. Bain, 736 F.2d 1480, 1488 (11th Cir. 1984) ("mobility of the [docked] vessel was an exigent circumstance justifying an immediate search"); United States v. Lingenfelter, 997 F.2d 632, 640–41 (9th Cir. 1993) (a boat in drydock could be seized by virtue of the automobile exception since the boat could be returned to the water and then flee); United States v. Weinrich, 586 F.2d 481, 492–93 (5th Cir. 1978) (the "automobile exception" is justification for not requiring a warrant for searches of ships).6

_____

6. We note that, given that a boat's mobility creates exigent circumstances, the March 28 search would have been justified even if section 89(a) was inapplicable since the Coast Guard possessed probable cause to search the Venture Pride. Searches not authorized under section 89(a) fall under regular Fourth Amendment jurisprudence, in which probable cause is required. We have previously defined probable cause "in terms of facts and circumstances sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Sharrar v. Felsing, 128 F.3d 810, 817–18 (3d Cir. 1997) (citing Gerstein v. Pugh, 420 U.S. 103, 111, 95 S. Ct. 854, 862 (1975)) (internal quotation marks omitted). The Coast Guard possessed probable cause given the witness who identified the Venture Pride as the source of the spill and given what Janssen observed during his first search of the Venture Pride. The existence of probable cause, combined with exigent circumstance arising from the boat's mobility, justified the March 28 warrantless search under regular Fourth Amendment jurisprudence.

9

IV.

For the above reasons, we will reverse the August 19, 1997, order of the district court suppressing evidence seized during the March 28, 1995, warrantless search of the Venture Pride. We will remand the case for further proceedings.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit